IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Crim. Action. No. 15-23-RGA |
| | ) | |
| WILMINGTON TRUST CORPORATION, | ) | |
| DAVID R. GIBSON, | ) | |
| ROBER V. A. HARRA, | ) | |
| WILLIAM NORTH, and | ) | |
| KEVYN RAKOWSKI, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

Presently before the Court is Defendants' Motion Regarding Potential Presentation of False Testimony to the Grand Jury (D.I. 390) and related briefing (D.I. 400, 403, 498, 502, 504). In their motion, Defendants request discovery to determine whether false testimony was knowingly presented to the grand jury that returned the Third Superseding Indictment. Defendants also request that I hold an evidentiary hearing on this matter. For the reasons that follow, Defendants' Motion requesting discovery and an evidentiary hearing is denied.

Defendants allege the Government may have presented false testimony to the grand jury that returned the original indictment when it elicited the following testimony from an FBI agent:

> Q: Did you have an opportunity or your fellow agents have an opportunity to ask Mr. Corkery and Mr. Fomunyan whether they were aware that the bank engaged in a practice of waiving loans from past due reporting?
>
> A: Yes.
>
> Q: And what was their response?
>
> A: Neither of the two were aware of the practice.

1

(D.I. 393, Exh. 2 at pp. 78–79). Defendants argue that the agent's response, "Neither of the two were aware of the practice," is inconsistent with an FBI interview report from 2013. The 2013 report states in part, "FOMUNYAN recalled that WT never reported their matured loans but instead had a 'perpetual extension' process where by loans were extended with no formal process or analysis." (D.I. 393, Exh. 1 at p. 2). Defendants argue that this apparent inconsistency between the grand jury testimony and the 2013 interview report suggests the Government may have secured the indictment based on the knowing presentation of false testimony to the grand jury. (D.I. 391 at 2). Citing *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988), Defendants argue the Court may be required to dismiss the Third Superseding Indictment if the Government did present false testimony. (*Id.* at 5).

The Government responds that Defendants "mischaracterize[] a single question-and-answer exchange" before the grand jury. (D.I. 400 at 6). The Government argues that the reference in the 2013 interview report to Mr. Fomunyam's awareness of matured loans was made in the context of discussing information he learned during credit file reviews. (*Id.*). According to the Government, these credit file reviews occurred three months after Wilmington Trust's capital raise that is the subject of the indictment. (*Id.* at 8). Further, the Government cites to a portion of the 2013 interview report, which the Government argues demonstrates that Mr. Fomunyam stated he had no knowledge of the Waiver Practice. (*Id.* at 7). At the hearing I held on September 16, 2017, the Government proffered that Mr. Fomunyam's interview statement[1] is

---

[1] I refer to the FBI agent's interview report as being Mr. Fomunyam's statement for convenience. It would be more accurate to describe the interview report as the FBI agent's statement, not Mr. Fomunyam's. *Cf. United States v. Starusko*, 729 F.2d 256, 263 (3d Cir. 1984) (concluding that an FBI report containing the FBI's interpretation of remarks made by a government witness during an interview did not constitute a "statement" by that witness as defined by the Jencks Act).

2

related to "four specific findings" made in the December 2010 examination report. (D.I. 516 at 214:19–23).

After having reviewed the briefing and Exhibits, I find that the agent's grand jury testimony is consistent with Mr. Fomunyam's interview statement. First, it appears the grand jury testimony and the interview report refer to two entirely different issues. In particular, the grand jury testimony appears to refer to Mr. Fomunyam's knowledge of Wilmington Trust's practice of waiving its matured loans from public reporting—that is, the Waiver Practice.[2] The interview report, on the other hand, appears to refer to Wilmington Trust's reporting of its matured loans directly to Mr. Fomunyam during the Federal Reserve's examination of the bank.

This interpretation is directly supported by the 2013 interview report. It is also consistent with the Government's explanation of the report. The first sentence under the "Matured Loans" heading must be read together with the two sentences that follow it. The report states in relevant part,

> FOMUNYAN recalled that WT never reported their matured loans but instead had a 'perpetual extension' process where by loans were extended with no formal process or analysis. FOMUNYAN never received any information (i.e. spreadsheet of matured loans) from WT listing their matured loans but instead learned of the practice from reading a memo or reviewing a credit file. FOMUNYAN asked WT to provide information on their matured loans, Working Capital Lines of Credit (WCLOC) and Ten Percent Rule (TPR) Loans but was always told that they couldn't locate the information in their system.

(D.I. 393, Exh. 1 at p. 2). When read together, these sentences can be reasonably understood to mean that Wilmington Trust allegedly never disclosed its matured loans

---

[2] In the Third Superseding Indictment, the Government defined the Waiver Practice as the bank's "practice of manually overriding SHAW in order to 'waive,' that is, to not include matured loans that were internally designated as 'current for interest' and 'in the process of extension' as past due in public reports to the SEC and the Federal Reserve." (D.I. 243 ¶ 15).

3

directly to Mr. Fomunyam. Nowhere in this portion of the interview report is there mention of Wilmington Trust's reporting of matured loans in public filings.

In contrast, the agent's testimony before the grand jury refers to Wilmington Trust's "practice of waiving loans from past due reporting." (D.I. 393, Exh. 2 at p. 79). It is clear from the eighty-four-page transcript (D.I. 498, Exh. A) produced by the Government that the agent's grand jury testimony related almost entirely to Wilmington Trust's public reporting obligations and to its practice of omitting matured loans from public filings. Thus, it is apparent that the question-and-answer before the grand jury regarding Mr. Fomunyam's knowledge of the bank "waiving loans from past due reporting" refers to his knowledge of the bank's reporting of those loans in public filings. I therefore do not believe the statements conflict.

I am not persuaded by Defendants' argument that Mr. Fomunyam's interview statement about what the Federal Reserve would have done "if the true extent of the aforementioned practice was known to the FRB in October of 2009" shows that he was aware of the Waiver Practice. (D.I. 403 at 3 n. 3). The portion of the interview report preceding that statement shows that the "aforementioned practice" refers to the practice of renewing matured loans without a formal process, not to the practice of waiving loans from past due reporting. (*See* D.I. 393, Exh. 1 at pp. 2–3). Although the interview report refers to "waived" loans (*see id.*), it is clear that any such reference does not relate to loans "waived" from public reporting requirements. Rather, the interview report uses the term "waived" in the context of discussing loans renewed without a formal process. (*See id.*).

4

Second, neither the interview report nor the grand jury testimony is clear about the time frame being discussed. I am persuaded, however, by the Government's explanation of the interview report, connecting Mr. Fomunyam's statements during that interview to specific findings from the 2010 Full-Scope examination. Specifically, Mr. Fomunyam's statements in the "Matured Loans" section of the interview report generally reflect the four specific findings made by the Federal Reserve in its 2010 Full-Scope examination. (*See* D.I. 400 at 9). As the Government notes, neither the 2009 Full-Scope examination report nor the 2010 Target examination report includes specific findings about the bank's matured loans. (D.I. 502 at 1–2). It is therefore apparent that Mr. Fomunyam's statements regarding Wilmington Trust's matured loans and its "practice of arbitrarily extending matured loans" (D.I. 393, Exh. 1 at p. 2) relate to the Federal Reserve's 2010 Full-Scope examination.

Thus, even if I agreed with Defendants' interpretation of Mr. Fomunyam's interview statement—that is, that he was aware of the Waiver Practice—it seems he would have learned of the practice sometime in June of 2010. (*See* D.I. 498, Exh. C at p. 1). None of the false statements Wilmington Trust allegedly made to the Federal Reserve, however, occurred after May of 2010. (*See* D.I. 243 ¶ 86, ¶ 88). Mr. Fomunyam therefore would have learned of the Waiver Practice after the time frame charged in the Third Superseding Indictment.

At most, then, Defendants have shown the agent's grand jury testimony may not have been complete or precise in one particular instance, since the time frame being discussed before the grand jury is unclear. Evidence of imprecise grand jury testimony, however, is not enough to warrant dismissal of the indictment. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 261 (1988) ("To the extent that a challenge is made to the accuracy of the [agents'] summaries, the mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the

5

indictment."). Further, absent any prosecutorial misconduct with respect to the FBI agent's grand jury testimony, there is no ground for dismissing the indictment. (*See id.* at 260). Here, there is no evidence of prosecutorial misconduct, and no basis for believing that there was any prosecutorial misconduct. I am therefore not persuaded that granting Defendants the discovery they seek is necessary or appropriate.

Defendants request that I order the Government to produce a broad category of materials relating to the Government's interviews with witnesses from the Federal Reserve. (D.I. 391 at 6). Defendants cite to Rule 16 and *Brady v. Maryland* to support this request. They state, "These materials are clearly relevant to the preparation of the defense and exculpatory, and thus subject to production under Rule 16 and/or *Brady v. Maryland*." (*Id.* at 6 n. 5). I am not persuaded that access to these materials is necessary for the reasons stated above. Of course, if the Government has notes or other evidence that tends to show Mr. Fomunyam knew of the Waiver Practice while it was occurring, the Government must disclose that evidence pursuant to its obligations under *Brady*. Further, I would expect as a matter of practice that original notes of the FBI agent's interview of Mr. Fomunyam would be produced. Those productions would meet the requirements of Rule 16 and *Brady v. Maryland*.

Defendants also request access to transcripts of grand jury testimony by Government witnesses. (*Id.* at 7). Defendants cite Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) to support their request. (*Id.* n. 6). Defendants also argue that "disclosure of the transcripts would not intrude on any aspect of the grand jury's secrecy or impair its ability to conduct its investigations." (D.I. 391 at 7 n. 6). They note that all government witnesses have already participated in the grand jury process and given their testimony, the Third Superseding Indictment has been returned, and producing the transcripts would not reveal the identity of

6

grand jurors or of any previously unknown testifying witness. (*Id.* at 7–8 n. 6). I am not persuaded, however, that Defendants have met their burden of showing that "a particularized need exists for the [grand jury] minutes which outweighs the policy of secrecy." *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959). Nor have Defendants shown that "a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. Proc. 6(e)(3)(E)(ii).

For the foregoing reasons, Defendants' Motion Regarding Potential Presentation of False Testimony to the Grand Jury (D.I. 390) is **DENIED**.

Entered this 22 day of September, 2017.

Richard G. Andrews
United States District Judge