IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Crim. Action. No. 15-23-RGA |
| | ) |
| WILMINGTON TRUST CORPORATION, ) | |
| DAVID R. GIBSON, | ) |
| ROBER V. A. HARRA, | ) |
| WILLIAM NORTH, and | ) |
| KEVYN RAKOWSKI, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

Presently before the Court is the Government's Motion Regarding Notice of Potential

Rule 404(b) Evidence. (D.I. 371). Defendant Wilmington Trust Corporation filed an opposition

(D.I. 399)[1] to which the Government replied. (D.I. 423). I held oral argument on September 16,

2017. (D.I. 516).

## I.   **LEGAL STANDARD**

Federal Rule of Evidence 404(b) governs the admissibility of crimes, wrongs, or other

acts. In particular, it concerns "evidence of extrinsic acts that might adversely reflect on the

actor's character." *United States v. Huddleston*, 485 U.S. 681, 685 (1988). The rule states in

relevant part,

> Evidence of a crime, wrong, or other act is not admissible to prove a person's
> character in order to show that on a particular occasion the person acted in
> accordance with the character. . . . This evidence may be admissible for another
> purpose, such as proving motive, opportunity, intent, preparation, plan,
> knowledge, identity, absence of mistake, or lack of accident.

---

[1] Wilmington Trust Co. filed the response. The other defendants have joined in it. (D.I. 402, 404, 406, 410).

1

Fed. R. Evid. 404(b)(1)-(2).

The rule is one of "general exclusion," requiring that prior bad acts be excluded "*unless* the proponent can demonstrate that the evidence is admissible for a non-propensity purpose." *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014). The Third Circuit has explained: "[Rule 404(b)] reflects the longstanding concern that evidence of prior bad acts, when offered only to show the defendant's propensity to commit the charged crime, 'is said to weigh too much with the jury and to so overpersuade them as to prejudice one with a bad general record and deny him a fair opportunity to defend against a particular charge.'" *Id.* at 275 (quoting *United States v. Sampson*, 980 F.2d 883, 886 (3d Cir. 1992)).

The Third Circuit requires that "four distinct steps" be satisfied before Rule 404(b) evidence can be admitted: "(1) the other-acts evidence must be proffered for a non-propensity purpose; (2) that evidence must be relevant to the identified non-propensity purpose; (3) its probative value must not be substantially outweighed by its potential for causing unfair prejudice to the defendant; and (4) if requested, the other acts evidence must be accompanied by a limiting instruction." *United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017). The most difficult step in this analysis is the second one, which the Third Circuit most often finds was inadequately performed. *See id.* at 243–45. The second step requires that the proffered evidence be relevant, that is, that it "fit into a chain of inferences . . . that connects the evidence to a proper purpose, no link of which is a forbidden propensity inference." *Id.* at 243 (citations in original omitted). Further, "[the] chain must be articulated with careful precision because, even when a non-propensity purpose is at issue in a case, the evidence offered may be completely

2

irrelevant to that purpose, or relevant only in an impermissible way." *Id.* (citations and alterations in original omitted).

While Rule 404(b) governs the admissibility of "extrinsic" acts, the law also recognizes "intrinsic" acts, which are outside the scope of the Rule. *United States v. Green*, 617 F.3d 233, 245 (3d Cir. 2010). The Third Circuit has set forth two "narrow" categories of intrinsic evidence: "First, evidence is intrinsic if it 'directly proves' the charged offense. . . . Second, 'uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime.'" *Id.* at 248–49.

Applying these rules to a conspiracy case, the Third Circuit stated, "Although proof of conspiracies is not limited to the charged start and end dates, the indictment's temporal parameters usually delineate the boundary between intrinsic and extrinsic evidence. Evidence outside the temporal bounds of the indicted conspiracy may still be admissible, if it satisfies the restrictions of Rule 404(b)." *United States v. Bailey*, 840 F.3d 99, 128 (3d Cir. 2016).

## II. DISCUSSION

The Third Superseding Indictment charges a conspiracy to make false statements about "past due loans" from October 2009 to November 2010. (*See* D.I. 243 ¶¶ 65–74). The general outlines of the conspiracy have been proffered at some length, but the case is complex and expected to be lengthy, and these rulings are subject to revision as the trial progresses. Even though the parties have tried to particularize the disputes, some of the disputes remain uncomfortably broad. The parties are free to request clarification and further rulings, and they should not read too broadly the rulings that follow.

3

## A. Group I

### a. Category 2

Category 2 consists of evidence related to Wilmington Trust's long-standing issues with managing matured loans, including unsuccessful attempts to resolve maturities through a short-form loan extension procedure in Fall 2006 and Fall 2007. (D.I. 371, Exh. A ¶ 2). Defendant does not object under Rule 404(b) to evidence regarding its attempts to resolve maturities in Fall 2006 and Fall 2007. (D.I. 399 at 8–9). Defendant does object under Rule 404(b), however, to other evidence the Government might offer in this category. (*Id.* at 9). Defendant argues the Government has failed to identify the specific "bad acts" it seeks to introduce and to articulate a chain of permissible inferences. (*Id.* at 9–10).

At the hearing I held on September 16, 2017, the Government explained that evidence in this category would show that Wilmington Trust experienced a "decade long problem . . . in administering matured and maturing loans." (D.I. 516 at 26:3–5). The Government proffered that it will introduce testimony from Wilmington Trust employees who were aware that loans identified as "in the process of extension" were not in any such process. (*Id.* at 29:11–15).

Evidence related to Wilmington Trust's administration of matured and maturing loans predating the beginning of the alleged conspiracy is presumptively extrinsic. *See Bailey*, 840 F.3d at 128. A Rule 404(b) analysis is therefore required. The Government proffered this evidence for the non-propensity purposes of knowledge and intent (*e.g.*, D.I. 516 at 28:15–18) as well as "background evidence regarding the waiver process." (*Id.* at 26:10–11).

I am not convinced that evidence of a decade-long problem at Wilmington Trust is particularly probative of Defendants' knowledge and intent during the relevant time period. I am similarly not persuaded that evidence of conduct during the ten years preceding the alleged

conspiracy is admissible under Rule 404(b) as background to "complete the story of the crime charged." *See United States v. Steiner*, 847 F.3d 103, 112 (3d Cir. 2017).

I will, however, allow the Government to introduce evidence from the time period of the alleged conspiracy, which shows that loans Wilmington Trust identified as "in the process of extension" were not actually in any such process. I find this evidence intrinsic to the charged conduct. Specifically, in the Third Superseding Indictment, the Government describes the Waiver Practice as the manner and means through which Defendants carried out the alleged conspiracy. (D.I. 243 ¶¶ 69–73). Thus, Defendants' use of the Waiver Practice during the relevant time period is intrinsic. It is conduct "performed contemporaneously with the charged crime . . . [that] facilitate[d] the commission of the charged crime." *Green*, 617 F.3d at 245. According to the Government, the Waiver Practice involved "waiv[ing]" matured loans from past due reporting that were "current for interest" and "in the process of extension." (D.I. 243 ¶ 15). The status of a particular loan as "in the process of extension," therefore, was integral to the Waiver Practice. Evidence from the relevant time period related to the bank's practice of identifying loans as "in the process of extension" when they were in fact not is thus intrinsic to the alleged conspiracy. I will also allow the Government to introduce evidence about short-form loan extensions in Fall 2006 and Fall 2007, to which Defendant does not object.

### b. Category 3

The evidence in Category 3 consists of statements made by Defendant William North before the time period of the charged conduct referring to the Waiver Practice, the reporting of past due loans, and the presence of matured loans in Wilmington Trust's loan portfolio. (D.I. 371, Exh. A ¶ 3). Defendant does not object under Rule 404(b), subject to an appropriate limiting instruction, to the introduction of any of the statements allegedly made by Mr. North

contained in paragraph 20 of the Third Superseding Indictment. (D.I. 399 at 10). Defendant's

objections to any additional statements made by Mr. North were resolved at the hearing. That is,

if statements in addition to those contained in the Indictment are offered at trial, Defendant does

not object under Rule 404(b) if those statements also relate to the reporting or waiving of past

due loans. (*See* D.I. 516 at 47:24–25, 48:1–3). I will provide an appropriate limiting instruction.

### c. Category 4

The Government describes the evidence in Category 4 as the following: "For the time

period 2006-2011, any statement made by any of the individual defendants, their co-conspirators,

or other Bank employees defining a mature, past due, non-performing, or non-accrual loan."

(D.I. 371, Exh. A ¶ 4). Subject to an appropriate limiting instruction, Defendant does not object

to any such statements relating to the definition of "'mature' or 'past due' loans that predate the

end of the alleged 'Waiver Practice' in July 2010." (D.I. 399 at 11). Defendant does object

under Rule 404(b), however, to other evidence included in this category. (*Id.*). At the hearing,

the Government proffered that the remaining evidence consists of two statements made by

Defendant David Gibson—one email on July 23, 2010 and a second email on November 21,

2010. (D.I. 516 at 49:14–15, 50:10–11). For the reasons I stated at the hearing (*id.* at 55:10–

56:6), I find those two emails admissible.

### d. Category 8

The Government describes Category 8 as containing evidence related to Wilmington

Trust's practice of waiving certain loans in workout from past due reporting. (D.I. 371, Exh. A ¶

8). Defendant's objections with respect to this category were resolved at the hearing. That is,

Defendant does not object to the introduction of the evidence in this category, subject to an

appropriate limiting instruction. (D.I. 516 at 57:20–25).

6

### e. Category 24

The Government describes Category 24 as evidence of Wilmington Trust's and the individual defendants' failure to disclose the Waiver Practice to KPMG or to the Federal Reserve during the time period predating the charges in the Indictment. (D.I. 371, Exh. A ¶ 24). Defendant objects to this category of evidence on the bases that the Government has failed to articulate a chain of permissible inferences, the evidence is extrinsic to the charged conduct, and the evidence is irrelevant. (D.I. 399 at 16–17).

Evidence in this category is presumptively extrinsic because it relates to conduct predating the beginning of the alleged conspiracy. *See Bailey*, 840 F.3d at 128. As I explained at the hearing (D.I. 516 at 76:7–19), however, to the extent the Government has an evidentiary basis to argue the Waiver Practice was concealed from KPMG or the Federal Reserve, I will admit that evidence. Evidence of concealment is highly probative of consciousness of guilt, which is a proper non-propensity purpose under Rule 404(b). The probative value of this evidence is not substantially outweighed by any unfair prejudice to Defendants under Rule 403.

### B. Group II

#### a. Category 9

Category 9 consists of evidence related to the prominence of a "sales culture" at Wilmington Trust. (D.I. 371, Exh. A ¶ 9). Defendant does not object to Exhibit F. (D.I. 399 at 18). Defendant does object, however, to other evidence in this category on the grounds that the Government has failed to articulate a chain of permissible inferences and that the evidence is extrinsic, irrelevant, and inadmissible under Rule 403. (*Id.* at 18–26).

In its motion, the Government refers to evidence of "the suppress[ion of] a functioning credit culture," acting "without regard to prudent underwriting principles," and "reckless

lending." (D.I. 371 at 14–15). I am not persuaded that broad statements related to a "sales culture" at the bank or to Wilmington Trust's imprudent banking practices are probative of any material issue in this case. I therefore will not admit evidence that relates generally to the bank's "sales culture."

Further, in its Rule 404(b) notice, the Government provided a list of specific evidence included in this category. (*Id.* Exh. A ¶ 9). In my opinion, the first bullet point does not invoke Rule 404(b). Wilmington Trust's "loan growth strategy" (*id.*) does not appear to involve any "bad act." Evidence of the bank's growth strategy is relevant, however, to the extent it provides the jury with information about how the bank was expanding leading up to the time period charged in the Indictment. I will therefore admit the evidence described in the first bullet point. I will not admit the evidence listed in the remaining bullet points because I do not find it relevant to any material issue in this case.

### b. Category 10

Category 10 consists of evidence related to Defendants' awareness of Wilmington Trust's use of supplemental financing, which permitted its commercial borrowers to keep otherwise non-performing loans current for interest. (*Id.* ¶ 10). Defendant objects to the introduction of this evidence on the grounds that it is extrinsic, irrelevant, and inadmissible under Rule 403. (D.I. 399 at 27–29).

I will allow the Government to introduce this evidence subject to the following limitations: (1) the evidence must relate to conduct during the time period of the alleged conspiracy or the months leading up to it, and (2) the evidence must relate to the use of supplemental financing for the "waived" loans that are at issue in this case.

8

Evidence related to Wilmington Trust's use of supplemental financing during the time period of the alleged conspiracy to keep "waived" loans current for interest is intrinsic to the charged conduct. As explained above, use of the Waiver Practice during the alleged conspiracy is intrinsic. According to the Government, the status of a loan as "current for interest" was a component to the Waiver Practice. (D.I. 243 ¶ 15). Thus, conduct related to the "current for interest" status of the waived loans at issue in this case is intrinsic to the charged conspiracy.

Evidence related to Wilmington Trust's use of supplemental financing before the beginning of the alleged conspiracy, however, is presumptively extrinsic. *See Bailey*, 840 F.3d at 128. A Rule 404(b) analysis is therefore required. The Government proffered this evidence for the non-propensity purposes of knowledge and intent. (D.I. 371 at 20–21). I am persuaded that evidence related to Wilmington Trust's use of supplemental financing in the months leading up to the beginning of the alleged conspiracy is probative of Defendants' knowledge. In particular, Defendants' knowledge of this practice, which was allegedly used to hide "waived" loans from public reporting requirements, is probative of their knowledge of that same practice during the time period charged in the Indictment. As Defendants noted at the hearing, supplemental financing is a proper and common practice in the commercial real estate industry. (D.I. 516 at 117:12–14, 120:19–21). To the extent Defendants used supplemental financing, however, to perpetuate the Waiver Practice in order to conceal past due loans from public reporting, evidence related to supplemental financing is relevant to show knowledge that the public statements about "past due loans" were based on a practice that undercounted the true number of those loans.

I will therefore allow the Government to introduce evidence, from the time period directly preceding the beginning of the alleged conspiracy, of the bank's use of supplemental

financing to keep the "waived" loans at issue current for interest. The probative value of this evidence is not substantially outweighed by the risk of unfair prejudice to Defendants. Further, if requested, I will provide an appropriate limiting instruction.

### c. Category 15

Category 15 consists of Wilmington Trust's introduction of a new appraisal policy in November 2008 and any communications between Wilmington Trust executives regarding this policy. (D.I. 371, Exh. A ¶ 15). For the reasons I stated at the hearing (D.I. 516 at 130:4–15), I will admit the evidence in Category 15.

### d. Category 16

The Government describes evidence in Category 16 as "[i]nformation relating to the 2008 KPMG Audit." (D.I. 371, Exh. A ¶ 16). Subject to an appropriate limiting instruction, Defendant does not object under Rule 404(b) to the introduction of information from the audit regarding matured loans, "past due" loans, or loan extensions. (D.I. 399 at 32). Defendant does object, however, to the introduction of other evidence related to the audit on the grounds that the Government has failed to articulate a chain of permissible inferences and that the evidence is extrinsic, irrelevant, and inadmissible under Rule 403. (*Id.* at 32–35). I understand from the Government's motion (D.I. 371 at 19), and from the September 16th hearing (D.I. 516 at 59:6– 11), that the Government specifically seeks to introduce KPMG's findings regarding Wilmington Trust's use of supplemental financing. Those findings are generally reflected in the highlighted documents the Government provided after the hearing (*see* D.I. 533, Exh. E), which I have reviewed.

I will allow the Government to introduce information related to KPMG's 2008 audit regarding Wilmington Trust's use of supplemental financing. The KPMG audit, which

10

concluded on March 22, 2009, is presumptively extrinsic. *See Bailey*, 840 F.3d at 128. As explained above, however, evidence from the months preceding the beginning of the alleged conspiracy related to Defendants' knowledge of the bank's use of supplemental financing as part of the Waiver Practice is probative of their knowledge of that practice during the relevant time period. The evidence is therefore relevant to a permissible non-propensity purpose under Rule 404(b). The probative value of this evidence is not substantially outweighed by a risk of unfair prejudice to Defendants under Rule 403. I will provide an appropriate limiting instruction.

### e. Categories 17 & 18

Categories 17 and 18 consist of the Federal Reserve's findings during examinations from 2008 through 2010, including information relating to the 2009 Full-Scope examination, which led to the issuance of the Memorandum of Understanding in October 2009. (D.I. 371, Exh. A ¶¶ 17, 18). At the hearing, the Government proffered that it does not intend to introduce any evidence from the Federal Reserve's 2008 examination. (D.I. 516 at 132:14–15). Further, the Government proffered that the findings it seeks to introduce relate to "credit risk, asset quality, and the overall finding as to what the bank was rated." (*Id.* at 133:25–134:1–2).

Subject to an appropriate limiting instruction, Defendant does not object under Rule 404(b) to the introduction of the Federal Reserve's findings that predate the alleged Waiver Practice regarding matured loans, "past due" loans, or loan extensions. (D.I. 399 at 35–36). Defendant does object, however, to the introduction of any additional findings by the Federal Reserve and the information relating to the 2009 Full-Scope examination on the grounds that the Government has failed to articulate a chain of permissible inferences and that the evidence is extrinsic, irrelevant, and inadmissible under Rule 403. (*Id.* at 36–38).

At this time, I will admit the findings the Government seeks to introduce from the Federal Reserve's 2009 Full-Scope examination for the non-hearsay purpose[2] of showing Defendants were on notice of the issues the Federal Reserve identified at the bank. While presumptively extrinsic, *see Bailey*, 840 F.3d at 128, the 2009 examination report is probative not only of Defendants' knowledge but also of Defendants' motive to conceal from the public the true state of the bank's loan portfolio. In other words, the examination identified financial problems at the bank, and the bank did not want those problems to appear to be worsening. The probative value of this evidence is not substantially outweighed by any of the relevant risks under Rule 403. I will provide an appropriate limiting instruction.

I will also admit certain findings the Government seeks to introduce from the Federal Reserve's 2010 Target examination for the same non-hearsay purpose. Defendants did not receive that examination report until May 26, 2010, after the last false statement was allegedly filed with the SEC and the Federal Reserve on May 10, 2010. (D.I. 243 ¶¶ 84, 88). Mr. Harra and Mr. Gibson, however, participated in an exit meeting on April 26, 2010, during which Federal Reserve representatives discussed the Target examination findings. Evidence of Mr. Harra's and Mr. Gibson's awareness of those findings is therefore probative of their continued motive to conceal from the public the true state of the bank's loan portfolio in the May 10, 2010 filings. I do not find the section labeled "Internal Audit" (D.I. 533, Exh. C-3 at pp. 8–9), however, to be relevant to any material issue in this case. I will therefore not admit that section of the report. I will admit, however, the other sections for the reasons explained above.

---

[2] Defendant separately moved to exclude findings from the Federal Reserve's examinations in its Motion *in Limine* #4. (D.I. 433). In addition to its objections under Rules 404(b), 402, and 403, Defendant objects to the admission of the Federal Reserve's findings on the basis that they are inadmissible hearsay. (*Id.* at 3). I will decide the hearsay issue separately, along with the other motions *in limine* that have been filed in this case.

12

Additionally, I will not admit the alleged false "past due" evidence submitted by Wilmington Trust in advance of the Federal Reserve's 2009 Full-Scope examination. (D.I. 243 ¶ 35). This submission is presumptively extrinsic because it occurred before the beginning of the alleged conspiracy. *See Bailey*, 840 F.3d at 128. At the hearing, the Government proffered that Wilmington Trust's submission "demonstrate[es] knowledge and intent to provide false past due information to the Federal Reserve." (D.I. 516 at 134:17–20). The Government has alleged, however, that Wilmington Trust submitted at least ten false statements to the Federal Reserve during the time period of the alleged conspiracy. (*See generally* D.I. 243). I am therefore not persuaded that introducing yet another allegedly false statement outside of the relevant time period is probative of Defendants' intent to make a false statement during the time period charged in the Indictment. It is not as though Defendants will suggest that the charged false statements were an accident.

Finally, I will not admit the Federal Reserve's 2010 Full-Scope examination report, which is dated December 22, 2010. (D.I. 533, Exh. C-4 at p. 1). The report itself is therefore not probative of Defendants' motive or intent to commit the charged offenses, as it is dated after the end of the charged conspiracy.

### f. Category 21

Category 21 consists of evidence related to the interaction between the individual defendants, their co-conspirators, members of senior management, and the Loan Review staff. (D.I. 371, Exh. A ¶ 21). Defendant does not object under Rule 404(b) to the introduction of Exhibits I and J, subject to an appropriate limiting instruction. (D.I. 399 at 38). Defendant does object, however, to the introduction of other evidence in this category on the grounds that the

Government has failed to articulate a permissible chain of inferences and that the evidence is extrinsic, irrelevant, and inadmissible under Rule 403. (*Id.* at 42–44).

I will admit the remaining evidence in this category, which consists of Exhibits G, H, K, and L. The evidence in these exhibits is presumptively extrinsic because it predates the beginning of the alleged conspiracy. *See Bailey*, 840 F.3d at 128. Neither Exhibit G nor Exhibit K appears to involve any "bad act" that might invoke Rule 404(b). Both exhibits are relevant, however, as they show Defendants were aware of issues with Wilmington Trust's loan portfolio.

Exhibits H and L, on the other hand, do suggest past wrongdoing. Like Exhibits G and K, Exhibits H and L are relevant to the extent they show Defendants' awareness of issues with the bank's loan portfolio. Evidence of Defendants' awareness of those issues is probative of their motive to conceal from the public the true state of the portfolio. Exhibits H and L are therefore relevant to a permissible non-propensity purpose under Rule 404(b). The probative value of these four Exhibits is not substantially outweighed by a risk of unfair prejudice to Defendants under Rule 403.

## C. Group III

### a. Category 5

Category 5 consists of statements made by the individual defendants or other members of senior management, from the period of 2009 to 2010, during investor meetings, telephone calls, or earnings calls relating to the condition of the Wilmington Trust's commercial loan portfolio. (D.I. 371, Exh. A ¶ 5; D.I. 516 at 161:13–17). At issue is Exhibit M, which consists of an email chain between Mr. North and Mr. Gibson. After the hearing, the Government provided additional documents related to their email exchange, including notes taken by an investment analyst from SunTrust during an investor field trip in August 2009. (*See generally* D.I. 533,

Exh. F). Defendant objects to the introduction of the email chain on the grounds that the Government has failed to articulate a permissible chain of inferences and that the evidence is irrelevant and inadmissible under Rule 403. (D.I. 399 at 40–42).

I will allow the Government to introduce this evidence to show Defendants were aware that information provided to analysts or investors related to credit trends in Wilmington Trust's loan portfolio, which includes information about past due loans (*see* D.I. 516 at 164:24), was material to those individuals' decisions to recommend that others buy or sell the bank's stock. The email chain is presumptively extrinsic because it predates the beginning of the alleged conspiracy. *See Bailey*, 840 F.3d at 128. Defendants' awareness in August 2009, however, is probative of their knowledge during the alleged conspiracy, which occurred between October 2009 and November 2010. (D.I. 243 ¶ 65). The probative value of this evidence is not substantially outweighed by a risk of unfair prejudice to Defendants under Rule 403. I will provide an appropriate limiting instruction.

### b. Category 12

Category 12 consists of Wilmington Trust's SEC filings and documents incorporated by reference, for 2008,[3] the first quarter of 2009, and the third quarter of 2010. (D.I. 371, Exh. A ¶ 12). As I explained at the September 16th hearing (D.I. 516 at 178:11–179:8), I will allow the Government to introduce this evidence, and Defendant may renew its objection at trial.

### c. Category 13

Category 13 consists of evidence showing the individual defendants' awareness that Wilmington Trust's rating agencies and stock analysts were focused on the bank's credit quality in evaluating the bank's condition. (D.I. 371, Exh. A ¶ 13). Defendant's objections to evidence

---

[3] At the hearing, 2008 was only mentioned in passing and appears to be at most limited to reporting on "past due loans." (D.I. 516 at 170:9–11). Perhaps not even that. (*Id.* at 170:16–20).

in this category were resolved at the hearing. (D.I. 516 at 180:21–181:2). If necessary, I will provide an appropriate limiting instruction.

#### d. Category 14

Category 14 consists of SEC Comment Letters and Wilmington Trust's responses to those letters during the time period of September 1, 2009 through June 2, 2010. (D.I. 371, Exh. A ¶ 14). Defendant objects to the introduction of the letters and responses on the grounds that they are irrelevant to Defendants' alleged efforts to conceal information about the Waiver Practice. (D.I. 399 at 45). At the hearing, however, the Government proffered that it does not seek to introduce this evidence to prove concealment. (D.I. 516 at 184:10). Rather, it seeks to introduce the letters and responses to show the types of information and disclosures that the SEC considers to be material. (*See id.* at 184:13–15). I will allow the Government to introduce the comment letters and responses for that limited purpose. The probative value of the letters and responses is not substantially outweighed by any risk of unfair prejudice to Defendants. If requested, I will provide a limiting instruction.

#### e. Category 19

Category 19 consists of evidence of Defendants' failure to disclose the Memorandum of Understanding to other bank personnel. (D.I. 371, Exh. A ¶ 19). At the hearing on September 16th, the Government stated that it does not intend to introduce any evidence with respect to this category. (D.I. 516 at 188:2–3).

#### f. Category 20

Category 20 consists of statements made by Mr. Gibson regarding his viewpoint on the level of disclosures in public filings. (D.I. 371, Exh. A ¶ 20). Defendant argues the Government has failed to articulate a chain of permissible inferences under Rule 404(b) with respect to these

16

statements. (D.I. 399 at 47). The Government did not discuss this evidence in its motion. After the hearing, it provided two specific statements it seeks to introduce. (D.I. 533, Exh. H).

The first document in Exhibit H, an email chain from May 2009, is presumptively extrinsic since it predates the beginning of the alleged conspiracy. *See Bailey*, 840 F.3d at 128. The first two emails in the chain discuss how many loans, including commercial, consumer, and real estate loans, Wilmington Trust reported in its Form 10-Q for the first quarter of 2009. (*See* D.I. 533, Exh. H-1 at pp. 1–3). The emails also discuss Brian Bailey's statement in a magazine regarding the number of real estate loans the bank had in Delaware. (*See id.* at pp. 2–3). Mr. Gibson is not included in the email chain until Ellen Roberts forwards him the conversation. In her email, Ms. Roberts requests that Mr. Gibson "consider adding disclosure for commercial mortgage loans that is the same as what [the bank] disclose[s] for commercial construction." (*Id.* at p. 1). Mr. Gibson responds: "Our experience has not shown tremendous advantages to more disclosure." (*Id.*). Mr. Gibson's reply is the only email that appears to involve an arguable "bad act" under Rule 404(b).

The Government has not explained why Mr. Gibson's email is relevant to a permissible non-propensity purpose under the Rule. It appears, however, that the Government seeks to introduce this evidence to show Mr. Gibson was aware of deficiencies in the bank's public disclosures, or possibly to argue that he did not generally believe in public disclosure.[4]

I am not convinced that the emails in Exhibit H-1 are probative of any relevant issue and, to the extent they are, there is a risk of unfair prejudice to Mr. Gibson. Specifically, the emails at issue concern disclosures in Wilmington Trust's Form 10-Q for the first quarter of 2009. That filing, however, is not at issue in this case. The Third Superseding Indictment charges

---

[4] The latter purpose would seem to be barred by Rule 404(a)(1).

Defendants with making false statements in the bank's Form 10-Q for the third quarter of 2009, not the first. (*See* D.I. 243 ¶¶ 78, 88). Further, Mr. Gibson is responding to a particular factual scenario regarding commercial mortgage and construction loans, and there is no evidence that his advice as related to that scenario was in any way erroneous. The emails therefore do not relate to any issues that are relevant to this case. They have no probative value. Even if they did, their probative value would be substantially outweighed by the risk of misleading the jury.

The second document included in Exhibit H consists of two emails, one of which was sent by Mr. Gibson. These June 2010 emails occurred during the time period of the charged conspiracy and do not otherwise appear to invoke Rule 404(b). At this time, however, I do not see how these two emails are relevant to any material issue in this case. I will therefore defer admitting them until their relevance is established.

### D. Group IV

#### a. Category 22

Category 22 consists of memoranda and emails authored by Defendants Kevyn Rakowski and Mr. Gibson demonstrating their knowledge of relevant accounting and regulatory guidance. (D.I. 371, Exh. A ¶ 22). Defendant objects to the introduction of this evidence on the grounds that it is irrelevant and inadmissible under Rule 403. (D.I. 399 at 50). For the reasons I stated at the hearing (D.I. 516 at 192:19–24), I will allow the Government to introduce this evidence, and Defendant may renew its objections at trial.

### E. Group V

#### a. Category 7

Category 7 consists of Wilmington Trust's application for and acceptance of TARP/CPP funds and evidence of the bank's intent to use capital generated through its February 2010 stock

18

offering to repay those funds. (D.I. 371, Exh. A ¶ 7). As I stated at the hearing (D.I. 516 at 193:2–6), this issue has been resolved, and, upon request, I will provide an appropriate limiting instruction with respect to this evidence.

## F. Group VI

### a. Category 6

Category 6 includes all forms of compensation provided to Defendants during the time period of 2007 to 2013. (D.I. 371, Exh. A ¶ 6). Defendant objects to the introduction of this evidence on the grounds that it is irrelevant and inadmissible under Rule 403. (D.I. 399 at 50–52). I ruled at the September 16th hearing that I will exclude evidence related to Defendants' salary, bonuses, or any other financial recompense. (D.I. 516 at 197:16–20).

### b. Categories 11 & 23

Category 11 consists of any "annual focal point review," performance review, or appraisal of the individual defendants or their direct supervisors. (D.I. 371, Exh. A ¶ 11). Category 23 consists of Wilmington Trust's plan to terminate Defendant Robert Harra in Summer 2010, its decision not to do so, M&T Bank's reassignment of Mr. Harra, and the circumstances and terms of Mr. Harra's separation from M&T Bank. (*Id.* ¶ 23). Defendant objects to the introduction of evidence in both categories on the grounds that the Government has failed to articulate a permissible chain of inferences and that the evidence is irrelevant and inadmissible under Rule 403. (D.I. 399 at 52–54).

After the hearing, the Government submitted Mr. North's focal point review with the highlighted portions it seeks to introduce. (D.I. 533, Exh. J). The Government had also offered an email related to Mr. Harra's job performance (D.I. 371, Exh. Q), which Mr. Harra moved to exclude in his Motion *in Limine* #1. (D.I. 420). The Government did not oppose Mr. Harra's

19

motion. (D.I. 530 at 19). At the pretrial conference on September 26, 2017, I granted Mr. Harra's motion with leave to reconsider. (D.I. 545 at 145:10–13).

I will allow the Government to introduce the highlighted portions of Exhibit J for the purpose of showing Defendants, in particular Mr. North and Mr. Harra, were aware of Wilmington Trust's deteriorating loan portfolio. Although presumptively extrinsic, *see Bailey*, 840 F.3d at 128, the February 2009 performance review is directly probative of Defendants' knowledge of the true state of the bank's commercial loan portfolio in February 2009, and therefore relevant to showing that they would have known the true state going forward. In addition to showing knowledge, the evidence is also probative of Defendants' motive to conceal from the public the true state of the bank's loan portfolio during the relevant time period. Knowledge and motive are permissible non-propensity purposes under Rule 404(b). There is no unfair prejudice. Therefore, the evidence is admissible under Rule 404(b).

## G. Other Categories

### a. Category 1

Category 1 consists of factual allegations set forth in the Indictment. (D.I. 371, Exh. A ¶ 1). Defendant objects to the introduction of this evidence on the ground that the Government has failed to articulate a chain of permissible inferences and that it is irrelevant. (D.I. 399 at 54). At the hearing, the parties agreed to meet and decide whether there are any remaining issues in dispute with respect to this category.

### b. Category 26

The Government describes Category 26 as consisting of M&T Bank's due diligence process and its commentary and conclusions regarding Wilmington Trust's commercial loan portfolio. (D.I. 371 Exh. A ¶ 26). Defendant objects to the introduction of this evidence on the

grounds that the Government has failed to articulate a permissible chain of inferences and that the evidence is irrelevant. (D.I. 399 at 55). After the hearing, the Government provided the specific evidence it seeks to introduce in this category. (D.I. 533, Exh. K). I have reviewed the portions of Exhibit K the Government seeks to admit.

The findings included in the due diligence report suggest at least some "bad acts" that might reflect adversely on the bank. Among other things, the report refers to weak underwriting practices and a "lack of annual reviews." (*Id.* at pp. 2, 5). Much of the report, however, does not appear to invoke Rule 404(b). Further, although the due diligence process and report occurred during the time period of the alleged conspiracy, the evidence fits neither of the narrow categories of intrinsic evidence identified by the Third Circuit in *United States v. Green*. That is, in my opinion, M&T Bank's findings, dated October 29, 2010 (D.I. 533, Exh. K at p 1), neither appear to directly prove nor to have facilitated the commission of the charged crime. *See Green*, 617 F.3d at 248–49. The evidence therefore is more properly characterized as extrinsic, and any arguable "bad acts" must be subject to a Rule 404(b) analysis.

The Government has not explained the purpose for which it offers this evidence. I do not, however, find the relevant portions of the due diligence report probative of Defendants' knowledge, motive, or intent during the relevant time period since the report was completed just prior to the end of the alleged conspiracy. I will therefore not admit Exhibit K for those purposes. The Government is free to submit to the Court an explanation regarding how the due diligence evidence is relevant to some other permissible purpose for which the Government seeks to admit it.

## III.    CONCLUSION

Defendants have requested numerous limiting instructions. (*See, e.g.*, D.I. 499, 558). I will not possibly be able to remember all of the limiting instructions I have agreed to give. Thus, notwithstanding my statements throughout this opinion, and, at other occasions, I request that Defendants (and the Government, where applicable) specifically request limiting instructions in real time, and, to the extent they see the issue arising in the course of a day's testimony, outside the presence of the jury at the conference we will hold before each day's testimony.

IT IS SO ORDERED this ___ day of October 2017.

Richard G. Andrews

United States District Judge