IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Crim. Action. No. 15-23-RGA |
| | ) | |
| WILMINGTON TRUST CORPORATION, | ) | |
| DAVID R. GIBSON, | ) | |
| ROBER V. A. HARRA, | ) | |
| WILLIAM B. NORTH, and | ) | |
| KEVYN RAKOWSKI, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

### Government's Motion *in Limine* #1 (D.I. 425)

The Government moves to preclude any evidence or argument regarding third party charging decisions. For the reasons stated at the pretrial conference (D.I. 545 at 62:10-63:3), that motion is **DENIED** without prejudice.

### Government's Motion *in Limine* #2 (D.I. 426)

The Government moves to recall case agents. At the pretrial conference, I indicated that based on the Government's representations, I will **GRANT** that motion, but Defendant may raise its objection at an appropriate time during trial. (*Id.* at 67:2-5).

### Government's Motion *in Limine* #3 (D.I. 427)

The Government moves to introduce at trial the proffer statements of Defendants Kevyn Rakowski and William B. North. As I indicated at the pretrial conference, I understand the proffer agreements to say that only the presentation of contradictory evidence, not argument, triggers the Government's ability under those agreements to introduce inconsistent statements

1

made by Ms. Rakowski or Mr. North. (*See id.* at 78:21-25). Further, I believe Wilmington Trust has a confrontation clause right, but I will defer ruling on that issue until it arises during trial. (*Id.* at 78:3-6). The Government's Motion *in Limine* #3 is therefore **DISMISSED** as premature.

## Government's Motion *in Limine* #4 (D.I. 428)

The Government moves to admit guilty pleas, plea agreements, and other grants of immunity. That motion is **GRANTED** as to guilty pleas and plea agreements, and for the reasons stated in my ruling on Defendant Wilmington Trust Corporation's Motion *in Limine* #3 (D.I. 432), it is **DENIED** as to grants of immunity.[1]

## Government's Motion *in Limine* #5 (D.I. 431)

The Government moves to preclude arguments designed to elicit jury nullification. Specifically, it seeks to preclude any reference to: (1) prosecutorial motives, (2) potential punishment, (3) current health problems of Defendants, their family members, or counsel, and (4) other biographical details of Defendants. That motion is **GRANTED** as to (2) and (3), **DENIED** as to (4), and **DISMISSED** as premature as to (1).

As I indicated at the pretrial conference (D.I. 545 at 91:8-11), I will exclude argument related to current health problems of Defendants, their family members, or their counsel. I also explained (*id.* at 91:16-22) that I will allow general biographical details of Defendants, including whether they have children, whether they are married, and where they were employed, if at all, before Wilmington Trust Corporation. As for other biographical details that Defendants wish to provide in the event they testify, I requested that the Government first be notified of those details. (*Id.* at 92:2-6). Further, I stated that Defendants may not argue to the jury potential punishment, though I acknowledged that the jury may get some idea of potential punishment

---

[1] I noted, however, in my ruling on D.I. 432, that my decision on the admissibility of evidence of grants of immunity may be subject to revision at trial.

2

from the cross-examinations of Mr. Bailey and Mr. Terranova. (*Id.* at 92:7-15). Finally, I indicated that I would reserve judgment on prosecutorial motives because it is unclear what exactly is meant by that. (*Id.* at 92:16-28).

**Government's Motion *in Limine* #6 (D.I. 434)**

The Government moves to admit evidence of Wilmington Trust's payment of witnesses' legal fees. As I understand it, the Government does not intend to suggest that Wilmington Trust's payment of witnesses' legal fees is any way improper (*see id.* at 97:12-13), rather, the Government seeks to introduce this evidence to show witness bias. (D.I. 434 at 2-3). As I indicated at the pretrial conference (D.I. 545 at 99:16-20), I will **RESERVE JUDGMENT** on this motion until I have a proposed limiting instruction and I have provided to me, with appropriate citation, legal authority showing that this is a proper practice under Delaware law.

**Government's Motion *in Limine* #7 (D.I. 436)**

The Government moves to admit evidence of the common interest agreement between Defendants and witnesses. For the reasons stated at the pretrial conference (*Id.* at 105:13-106:6), that motion is **DENIED**.

**Government's Motion *in Limine* #8 (D.I. 438)**

The Government moves to declare nine former and current bank employees as identified with an adverse party and hostile witnesses pre-trial. For the reasons stated at the pretrial conference (*Id.* at 107:8-14, 16-18), that motion is **DENIED** with leave to renew at trial.

**Government's Motion *in Limine* #9 (D.I. 439)**

The Government moves to designate during trial former and current bank employees as hostile witnesses. At the pretrial conference, I **DISMISSED** that motion as premature. (*Id.* at 109:11-12).

3

### Government's Motion *in Limine* #10 (D.I. 441)

The Government moves to preclude lay witnesses from presenting opinions consisting of legal conclusions. As I indicated at the pretrial conference (*see id.* at 112:15-22), that motion is **GRANTED** as to lay witnesses' use of the word "conspiracy." I stated that I will rule on witnesses' use of other terms or phrases on an objection-by-objection basis at trial. (*Id.*).

### Government's Motion *in Limine* #11 (D.I. 444)

The Government moves to admit prior grand jury testimony pursuant to Federal Rule of Evidence 801(d)(1)(A). As I indicated at the pretrial conference (*Id.* at 114:7-9), that motion is **DISMISSED** as premature.

### Government's Motion *in Limine* #12 (D.I. 447)

The Government moves to preclude Defendants from misusing memoranda of witness interviews. As I indicated at the pretrial conference (*id.* at 115:13-14), that motion is **DISMISSED** as premature.

### Government's Motion *in Limine* #13 (D.I. 451)

The Government moves to preclude Defendants from presenting any evidence or argument that Defendants reasonably relied on the advice of auditors or accountants. As I indicated at the pretrial conference, that motion is **DENIED**. (*Id.* at 117:13-18).

### Government's Motion *in Limine* #14 (D.I. 482)

The Government moves to exclude evidence of Joseph Terranova's extramarital affairs, Mr. Terranova's DUI arrest in 2013, and Brian Bailey's use of a derogatory remark. In its response, Defendant stated that it does not intend to offer evidence of Mr. Bailey's derogatory remark. (D.I. 528 at 24). For the reasons I stated at the pretrial conference (D.I. 545 at 119:11-21), this motion is **DENIED** as to the evidence of Mr. Terranova's DUI arrest in 2013. Further, I

4

explained that I would **RESERVE DECISION** on the admissibility of evidence related to Mr. Terranova's alleged extramarital affairs until the issue is raised at trial. (*Id.* at 124:14-125:4).

## Government's Motion *in Limine* #15 (D.I. 453)

The Government moves to preclude improper character evidence. As I stated at the pretrial conference (*id.* at 125:10-14), that motion is **DISMISSED** as premature.

## Government's Motion *in Limine* #16 (D.I. 456)

The Government moves to exclude miscellaneous questioning regarding Mr. Librock's prior employment. As I stated at the pretrial conference (*id.* at 125:15-18), that motion is **GRANTED** with no objection by Defendant.

## Defendant Wilmington Trust Corporation's Motion *in Limine* #1 (D.I. 429)

Defendant moves to exclude evidence of drops in Wilmington Trust stock price absent reliable expert testimony. For the reasons stated at the pretrial conference (*id.* at 170:17-21), that motion is **GRANTED**.

## Defendant Wilmington Trust Corporation's Motion *in Limine* #2 (D.I. 430)

Defendant moves to exclude investigatory statements of non-testifying defendants or, in the alternative, to be granted a severance. As I explained above, I believe Wilmington Trust has a confrontation clause right, but I will defer ruling on that issue until it arises during trial. Defendant's Motion *in Limine* #2 is therefore **DISMISSED** as premature.

## Defendant Wilmington Trust Corporation's Motion *in Limine* #3 (D.I. 432)

Defendant moves to exclude evidence of prior invocations of the Fifth Amendment or grants of immunity. That motion is **GRANTED** as to grants of immunity, however, this ruling may be subject to revision at trial. In its response, the Government stated that it does not intend to introduce evidence of witnesses' prior invocations of the Fifth Amendment. (D.I. 530 at 6).

5

Although, as the Government indicates, it is "well-settled" that "evidence of a testifying witness's guilty plea or plea agreement may be introduced for probative, and therefore permissible purposes," *United States v. Universal Rehab. Servs., Inc.*, 205 F.3d 657, 666 (3d Cir. 2000) (en banc), the Third Circuit has never extended that principle to evidence that witnesses are testifying under grants of immunity. Further, I understand a grant of immunity essentially to be based on an individual's invocation of, or potential to invoke, the Fifth Amendment. Evidence of a witness's prior invocation of the Fifth Amendment, however, is generally inadmissible. *See, e.g., Nezowy v. United States*, 723 F.2d 1120, 1124-25 (3d Cir. 1983). Just as evidence of a witness's prior invocation of the Fifth Amendment could cause the jury to "draw improper inferences," *id.* at 1123, so too could evidence of a witness's grant of immunity.

Defendants represented that they would not bring up grants of immunity. (D.I. 545 at 81:10). Under the circumstances of this case, the jury is likely to infer that the grants of immunity indicate that the witnesses, all former Wilmington Trust Corporation employees, have done something wrong. The grants of immunity have virtually no probative value, and any probative value is substantially outweighed by the danger of unfair prejudice to Defendants. I therefore will generally not allow the Government to introduce evidence that witnesses are testifying under grants of immunity. I can, however, envision limited circumstances in which evidence of a grant of immunity would be probative and not unfairly prejudicial to Defendants. If appropriate, therefore, this ruling may be subject to revision at trial.

### Defendant Wilmington Trust Corporation's Motion *in Limine* #4 (D.I. 433)

Defendant moves to exclude regulatory findings and bank examination materials other than those addressing matured loans, "past due" loans, or loan extensions. That motion is **GRANTED IN PART** and **DENIED IN PART**. In my ruling on the Government's Rule 404(b)

6

motion, I explained that the Government may introduce certain findings from the Federal Reserve's 2009 Full-Scope and 2010 Target examinations for the non-hearsay purpose of showing Defendants were aware of the issues identified by the Federal Reserve. (D.I. 560 at 11-12). I found that evidence probative of Defendants' knowledge and motive to conceal from the public the true state of Wilmington Trust's loan portfolio. (*Id.*). I will not, however, allow the Government to introduce the Federal Reserve's findings for their truth.

The Government argues, citing *United States v. Sokolow*, 91 F.3d 396 (3d Cir. 1996), that the Federal Reserve's findings are admissible under Federal Rule of Evidence 803(6), that is, the business records exception to the rule against hearsay. (D.I. 530 at 7–8). Defendant disagrees. (D.I. 433 at 3).

In the Third Circuit, "hearsay documents" are admissible under Rule 803(6) if "a foundation is laid by 'the custodian or other qualified witness' that: (1) the declarant in the records had personal knowledge to make accurate statements; (2) the declarant recorded the statements contemporaneously with the actions that were the subject of the reports; (3) the declarant made the record in the regular course of the business activity; and (4) such records were regularly kept by the business." *Sokolow*, 91 F.3d at 403 (alterations and citations in original omitted); *see also* Fed. R. Evid. 803(6).

I am not persuaded that the Federal Reserve's findings meet these requirements. The examination reports cannot properly be characterized as "record[s] . . . regularly kept by the [Federal Reserve]." Fed. R. Evid. 803(6).[2] These examination reports are clearly evaluative in nature, rather than "routine record[s] of fact." *See United States v. Casoni*, 950, F.2d 893, 912

---

[2] As Defendant Wilmington Trust Co. stated in its motion, these reports "most naturally resemble a public record under [Rule 803(8)]. (D.I. 433 at 3). Under that rule, however, factual findings made pursuant to a legally authorized investigation are not admissible against a defendant in a criminal case. Fed. R. Evid. 803(8)(A)(iii).

7

(3d Cir. 1991). The stated purpose for the 2009 Full-Scope examination, for example, was "to evaluate [Wilmington Trust's] overall financial condition and compliance with banking laws and regulations." (D.I. 533, Exh. C-1 at p. 4). They also do not meet the second requirement. In completing these examinations, Federal Reserve examiners conducted inspections over the course of several months in order to reach conclusions about the bank. The reports produced at the end of those examinations, therefore, were not produced "contemporaneously with the actions that were the subject of the reports." Fed. R. Evid. 803(6). Thus, at a minimum, these examination reports fail two of the requirements under Rule 803(6). They are not the product of a routine, record-keeping process.

Further, I am not persuaded that the Federal Reserve's findings are admissible as business records under *Sokolow*. In that case, the document at issue, which the court found admissible under Rule 803(6), was "a compilation and summary . . . of unpaid insurance claims" prepared for the Pennsylvania Insurance Department by a third-party administrator. *Id.* at 402-03. The court acknowledged that the document had "some indicia of a public report under Rule 803(8)(C)," but nevertheless found it admissible against a criminal defendant under Rule 803(6). *Id.* at 404-05.

Unlike a compilation of insurance claims, however, the examination reports at issue here contain evaluations of various aspects of the bank—they do not simply list, for example, Wilmington Trust's various commercial real estate loans, similar to the way the document in *Sokolow* listed and summarized the unpaid insurance claims. That document, therefore, is distinguishable from the Federal Reserve examination reports at issue in this case. I therefore will not admit the Federal Reserve's examination findings as business records under Rule 803(6).

### Defendant Wilmington Trust Corporation's Motion *in Limine* #5 (D.I. 435)

Defendant moves to exclude evidence regarding KPMG's 2008 audit. That motion was resolved in D.I. 560 at pages 10 to 11.

### Defendant Wilmington Trust Corporation's Motion *in Limine* #6 (D.I. 440)

Defendant moves to exclude evidence regarding "supplemental financing." That motion was resolved in D.I. 560 at pages 8 to 10.

### Defendant Wilmington Trust Corporation's Motion *in Limine* #7 (D.I. 442)

Defendant moves to exclude evidence regarding and references to irrelevant loans. That motion was **RESOLVED** by agreement at the pretrial conference. (*See* D.I. 545 at 191:4-194:20). As I understand it, the Government agrees that it will not introduce "vignettes" about loans that are not included in the relevant loan pool, similar to the findings made by the Federal Reserve about two Pennsylvania auto dealerships that are irrelevant to this case, for example. (*See id.* at 194:11-18).

### Defendant Wilmington Trust Corporation's Motion *in Limine* #8 (D.I. 445)

Defendant moves to exclude evidence of a "sales culture" at Wilmington Trust. That motion was resolved in D.I. 560 at pages 7 to 10.

### Defendant Wilmington Trust Corporation's Motion *in Limine* #9 (D.I. 448)

Defendant moves to exclude evidence regarding loan performance and risk ratings after the end of the alleged Waiver Practice. At the hearing, I **GRANTED** that motion as to the November Treliant report. (D.I. 545 at 204:24). The November Treliant report is **EXCLUDED**. I held in my Rule 404(b) opinion, however, that I would admit Exhibit K. (D.I. 560 at 14).

### Defendant Wilmington Trust Corporation's Motion *in Limine* #10 (D.I. 450)

Defendant moves to exclude statements made after July 2010 as inadmissible hearsay.

9

At the pretrial conference, I ruled that Wilmington Trust's Motion *in Limine* #10 is **DISMISSED** as premature. (D.I. 545 at 211:1-3).

## Defendant Wilmington Trust Corporation's Motions *in Limine* #11 (D.I. 454) and #12 (D.I. 455)

Defendant moves to exclude evidence regarding Defendants' alleged failure to disclose the Waiver Practice to KPMG, to the Federal Reserve (D.I. 454), and in the bank's SEC filings. (D.I. 455). I stated in my Rule 404(b) opinion that I would admit evidence related to Defendants' failure to disclose the Waiver Practice to KPMG. (D.I. 560 at 7). As I indicated at the pretrial conference, I will **DISMISS**, without prejudice, Wilmington Trust's motions *in limine* #11 and #12 (D.I. 545 at 213:23-214:2), as to evidence related to Defendants' alleged failure to disclose the Waiver Practice to the Federal Reserve and in the bank's SEC filings. Defendant is free to raise its objections again at an appropriate time during trial.

## Defendant Wilmington Trust Corporation's Motion *in Limine* #13 (D.I. 457)

Defendant moves to exclude all references to and results from collateral government enforcement actions. In particular, Defendant seeks to exclude two specific SEC enforcement actions. At the pretrial conference, I indicated that I would **GRANT** the motion as to those enforcement actions, with no opposition by the Government. (*See* D.I. 545 at 214:3-16). The two SEC enforcement actions are therefore **EXCLUDED**.

## Defendant Wilmington Trust Corporation's Motion *in Limine* #14 (D.I. 458)

Defendant moves to exclude reference to Wilmington Trust as a "failed bank." As I stated at the pretrial conference, that motion is **GRANTED** as to the term "failed bank." (*Id.* at 222:16-18). Defendant is free to raise objections to the use of other terms or phrases at an appropriate time during trial.

10

**Defendant Wilmington Trust Corporation's Motion *in Limine* #15 (D.I. 459)**

Defendant moves to exclude reference to the alleged effects of the M&T acquisition. As I explained at the pretrial conference, that motion is **GRANTED** as to any reference to mass layoffs and to the extent anyone other than the witness who is testifying about what happened to that witness personally. (*Id.* at 224).

**Defendant Wilmington Trust Corporation's Motion *in Limine* #16 (D.I. 460)**

Defendant moves to exclude Government evidence, commentary, or argument on the quality of Wilmington Trust's loan portfolio. As I understand it, that motion was resolved by my Rule 404(b) opinion in which I addressed the admissibility of evidence related to the state of the bank's loan portfolio at various times. (*See* D.I. 560 at 12, 14, 20). If Defendant wishes to object to other categories or pieces of evidence that I did not rule on in D.I. 560, it may do so at an appropriate time during trial.

**Defendant Wilmington Trust Corporation's Motion *in Limine* #17 (D.I. 461)**

Defendant moves to exclude reference to loan extensions as "mass extensions" and to exclude references to failure to disclose extensions. For the reasons stated at the pretrial conference (D.I. 545 at 226:21-227:15), that motion is **DENIED**.

**Defendant Wilmington Trust Corporation's Motion *in Limine* #18 (D.I. 462)**

Defendant moves to exclude references to "hidden tabs" in Excel spreadsheets. As I indicated at the pretrial conference (*id.* at 237:10-13), I will **RESERVE DECISION** on that motion until I am provided information regarding how the "hidden tab" feature exactly worked in this case.

11

### Defendant Wilmington Trust Corporation's Motion *in Limine* #19 (D.I. 463)

Defendant moves to exclude evidence regarding SEC Comment Letters. That motion was resolved in D.I. 560 at page 16.

### Defendant Wilmington Trust Corporation's Motion *in Limine* #20 (D.I. 464)

Defendant moves to exclude hindsight evidence regarding the meaning of "past due" loans. That motion was **RESOLVED** at the pretrial conference. (*See* D.I. 545 at 240:8-244:10). As I indicated, I generally agree with Defendant that when witnesses are asked about their understanding of what constitutes a "past due loan," they should be asked about their understanding of that term during the relevant time period. (*Id.* at 242:12-18).

### Defendant Wilmington Trust Corporation's Motion *in Limine* #21 (D.I. 465)

Defendant moves to exclude evidence regarding pre-October 2009 "bad acts" that were not included in the Government's Rule 404(b) Notice. As I indicated at the pretrial conference (*id.* at 244:23), that motion is **GRANTED**.

### Defendant Wilmington Trust Corporation's Motion *in Limine* #22 (D.I. 466)

Defendant moves to exclude a September 9, 2010 PowerPoint titled "Commercial Lending Culture Presentation." As I indicated at the pretrial conference (*id.* at 252:23-253:20), that motion is **GRANTED**.

### Defendant Wilmington Trust Corporation's Motion *in Limine* #23 (D.I. 467)

Defendant moves to exclude references to interest or principal waivers. Based on my understanding that the parties were in agreement, I ruled at the pretrial conference that I would **GRANT** that motion. (*Id.* at 253:21-254:2).

**Defendant Wilmington Trust Corporation's Motion *in Limine* #24 (D.I. 468)**

Defendant moves to exclude evidence of job performance. That motion was resolved in D.I. 560 at pages 19 to 20.

**Defendant Wilmington Trust Corporation's Motion *in Limine* #25 (D.I. 469)**

Defendant moves to exclude all references to Wilmington Trust being owned by a New York bank, that is, M&T Bank. I ruled at the pretrial conference that I would **DENY** that motion. (D.I. 255:22-256:6).

**Defendant Wilmington Trust Corporation's Motion *in Limine* #26 (D.I. 471)**

Defendant moves to exclude evidence regarding loans waived by Wilmington Trust's commercial loan recovery group. At the pretrial conference, I **DISMISSED** that motion as agreed-to. (D.I. 545 at 257:14-15).

**Defendant Wilmington Trust Corporation's Motion *in Limine* #27 (D.I. 472)**

Defendant moves to exclude evidence regarding Defendants' wealth or compensation. That motion was resolved as to the individual defendants at the Rule 404(b) hearing (D.I. 516 at 197:16-20) and in D.I. 560 at page 19. I also stated my reasons for excluding that evidence at the pretrial conference. (D.I. 545 at 257:18-258:7). Accordingly, Defendant's Motion *in Limine* #27 is **GRANTED** as to evidence related to the individual defendants' wealth and compensation, and, as I indicated at the pretrial conference (*id.* at 259:9-10), it is **DENIED** as to evidence of the bank's wealth.

**Defendant Kevyn Rakowski's Motion *in Limine* to Preclude Use of Her Proffer Statement (D.I. 470)**

Ms. Rakowski moves to preclude the Government from using her proffer statement unless she or her counsel offers specific evidence that contradicts the proffer statement. That motion is **GRANTED**. As I explained above and during the pretrial conference (*see id.* at 78:21-

13

25), I understand the waiver in Ms. Rakowski's proffer agreement to be triggered only in the event of her or her counsel presenting contradictory evidence, not argument.

### Defendant Robert V.A. Harra's Motion *in Limine* #1 (D.I. 420)

Defendant moves to exclude an email from Gail Howard to Donald Foley dated February 17, 2011 and any testimony regarding that email. At the pretrial conference, I **GRANTED** that motion with no opposition by the Government, and with leave to reconsider. (*Id.* at 145:10-13).

### Defendant Robert V.A. Harra's Motion *in Limine* #2 (D.I. 424)

Defendant moves to exclude purported "push back" evidence. At the pretrial conference, I **GRANTED** that motion with no opposition from the Government. (*Id.* at 146:12-13).

### Defendant David R. Gibson's Motion *in Limine* to Exclude the January 2009 Email and Related Testimony (D.I. 473)

Defendant David Gibson moves to exclude a January 2009 email and related testimony. That motion is **GRANTED**, however, my ruling may be subject to revision at trial. The email, sent by Brian Bailey to Mr. Gibson, contains a script that parodies the film "A Few Good Men." Mr. Gibson offered no response to receipt of the email. The script attached to the email depicts a fictitious meeting between Wilmington Trust executives (principally Mr. Bailey) and a KPMG auditor. Mr. Bailey is the bank's counterpart to Jack Nicholson in the movie.

The Government argues the email is probative of Mr. Gibson's knowledge that Wilmington Trust, "(1) was 'doctor[ing] the SHAW system' through the waiver practice; (2) had loans that were only current for interest because relationship managers were using loopholes like '10% rule cash balls' to keep the loans propped up; and (3) that the loan portfolio was sub-standard and deteriorating." (D.I. 530 at 21). The Government argues the email shows Mr. Gibson's motive and intent to lie. (*Id.*).

14

In my opinion, the email is not particularly probative of Mr. Gibson's knowledge, intent, or motive to lie during the time of the alleged conspiracy, which began about nine months after the email. The script is entirely fictitious and unclear as to whether it concerns any of the "past due loans" subjected to the Waiver Practice that are at issue in this case. Although the script refers to the "doctor[ing] of the SHAW system" (D.I. 473, Exh. A at p. 6),[3] it says nothing about the Waiver Practice or "past due loans." Further, while it refers to "10% rule cash balls" (*e.g.*, *id.* at p. 2), which I understand to be a form of supplemental financing, it similarly does not tie use of the 10% rule to any particular loans that are at issue in this case.[4] The script, therefore, calls for speculation, and any relevant knowledge or intent of Mr. Gibson that one might infer from the script is attenuated. The most I can say about the email and the script is that Mr. Bailey thought Mr. Gibson would find the script funny. Thus, it is not probative and could mislead the jury.

Even if the script had any probative value, I am not convinced the Government has a need for it given the evidence that I explained I would admit in my ruling on the Government's Rule 404(b) motion. *See United States v. Driggs*, 823 F.2d 52, 54 n.2 (3d Cir. 1987) (noting that part of Rule 403 balancing "involves evaluating the presence or absence of a genuine need for the evidence in question"). In particular, I stated throughout that opinion that I would admit certain categories of evidence to show Defendants' knowledge of the state of the bank's loan portfolio (*e.g.*, D.I. 560 at 12, 14, 20), to show Defendants' knowledge of the bank's use of supplemental financing for the "past due loans" at issue in this case (*id.* at 8-9), and to show Defendants' knowledge of other practices related to waiving "past due loans." (*Id.* at 5). Thus

---

[3] I do not understand the manual overriding of the SHAW system to be a disputed fact, and the parody suggests that KPMG was aware of the "doctoring" in December 2008, when the meeting took place.

[4] I do not understand that the use of the "10% rule cash balls" is going to be a disputed fact, although I expect Defendants will characterize the practice differently than does the Government.

15

the Government does not, in my opinion, have a genuine need for the email and the script. In any event, I do not find the script probative, and, to the extent it has any probative value, it is substantially outweighed by the risk of misleading the jury and the risk of unfair prejudice to Defendants. Therefore, I will not admit it. I can, however, envision limited circumstances in which at least a portion of the script might be probative of a relevant issue, and therefore my ruling may be subject to revision at trial.

### Defendant William B. North's Motion *in Limine* to Preclude Mischaracterization His Separation of Employment (D.I. 452)

Defendant William North moves to preclude the Government from introducing evidence that would mischaracterize his separation from Wilmington Trust. In its response, the Government indicated that it does not seek to introduce evidence that Mr. North was fired or asked to resign in its case-in-chief, but that it reserves the right to introduce that evidence in the event Mr. North testifies at trial. (D.I. 530 at 18). At the pretrial conference, I indicated that I will **RESERVE DECISION** on the admissibility of evidence related to Mr. North's interactions with Federal Reserve examiners. (D.I. 545 at 141:20-24). I requested, however, that on the morning Mr. Corkery and Mr. Fomunyam are going to testify, that one of the parties reminds me of this issue. (*Id.* at 141:22-142:1).

### Defendant William B. North's Motion *in Limine* Regarding Wilmington Trust's Capital Raise (D.I. 449)

Defendant moves to preclude the Government from arguing, suggesting, or presenting evidence that Mr. North had any connection to Wilmington Trust's stock offering in February 2010. At the pretrial conference, I **DENIED** that motion without prejudice. (*Id.* at 145:2-4).

16

### Defendant William B. North's Motion *in Limine* to Preclude the Government's Use of His Proffer Statements in its Case-In-Chief (D.I. 446)

Defendant moves to preclude the Government from using his proffer statements in its case-in-chief. As I explained in connection with the Government's Motion *in Limine* #3, I understand the waiver in Mr. North's proffer agreement to be triggered only in the event that he or his counsel presents contradictory evidence, not argument. The motion is therefore **GRANTED** to that limited extent, and otherwise **DISMISSED** as premature.

### Defendant William B. North's Motion *in Limine* to Preclude the Mischaracterization of an Email Referenced in Paragraph 42 of the Indictment (D.I. 443)

Mr. North moves to exclude the Government from mischaracterizing as a "concession" an email referenced in paragraph 42 of the Indictment, sent by Mr. North to employees at the bank. That motion was **RESOLVED** at the pretrial conference. As I explained (D.I. 545 at 143:1-4, 13-16), I understand the Government will introduce the actual email at issue, and it is within the fair bounds of argument for the Government to characterize during its closing argument that this email is a concession by Mr. North.

IT IS SO ORDERED THIS __6__ day of October 2017.

*Richard G. Andrews*
United States District Judge

17