IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Crim. No. 15-23-RGA |
| | ) | |
| DAVID R. GIBSON, | ) | |
| ROBERT V. A. HARRA, | ) | |
| WILLIAM NORTH, and | ) | |
| KEVYN RAKOWSKI, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

Defendants[1] filed a motion to exclude the expert testimony of Dr. Alan Hess. (D.I. 382, 595). The Government filed a response. (D.I. 397). The Court heard testimony from Dr. Hess and Defendants' expert, Dr. David Smith, on November 29, 2017. (D.I. 599). At the hearing, the Court requested, and the parties subsequently submitted, supplemental letters in regard to Dr. Hess's proffered testimony. (D.I. 609, 618, 622, 641-1).

Since Defendants originally filed their motion, arguments related to Dr. Hess's testimony and objections thereto have come and gone.[2] I think two principal issues remain in regard to Dr. Hess. The first is whether he can testify about the four event studies he performed on Wilmington Trust's earnings releases. The second is whether he can testify about Uniform Bank Performance Report data.

---

[1] Wilmington Trust Co. filed the motion. The individual Defendants joined. (D.I. 402, 404, 405, 410). On October 12, 2017, I entered an order dismissing the case against Wilmington Trust. (D.I. 583).

[2] Since Defendants filed their motion, the Government has represented that it no longer seeks to introduce evidence or testimony regarding the damages attributable to the alleged false statements. (D.I. 597 at 1). Thus, Dr. Hess will not testify about "loss causation" or "backcasting" related to the "true price line" of the Bank's stock. (*Id.*; D.I. 397 at 2; *see also* D.I. 599 at 6:15–17). I therefore only address Defendants' objections to what remains of Dr. Hess's proffered testimony.

"An event study is a statistical regression analysis that examines the effect of an event on a dependent variable, such as a corporation's stock price." *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1014 (C.D. Cal. 2003). The Third Circuit has stated that it "do[es] not view the event study as an impermissible methodology under the reliability factors mentioned in *Daubert*, 509 U.S. at 594–95." *United States v. Schiff*, 602 F.3d 152, 174 n.31 (3d Cir. 2010).

The Government offers the testimony of Dr. Hess to prove the materiality of the false statements alleged in the Third Superseding Indictment. (*See* D.I. 622 at 1). In particular, as I understand it, Dr. Hess would testify about the four event studies he performed as evidence of the relationship between the Bank's reporting of its past due loans and its stock price. (*See* D.I. 609 at 2). The event studies correspond to four dates on which the Bank announced its quarterly earnings information. Subsequent to the four announcements, the Bank's stock price dropped. The earnings announcements include various "factors" contributing to the Bank's earnings results. Those "factors" include, among others, the Bank's provision for loan losses. (*E.g.*, D.I. 599, PTX-5 at p. 1). At the hearing, Dr. Hess testified that the Bank's provision for loan losses is related to its number of past due loans. (*See id.* at 20:20–23). Further, in its supplemental letter, the Government proffered that trial evidence, including the Bank's internal guidelines, will show the connection between the Bank's number of past due loans and its loan loss provision. (D.I. 609 at 2).

Defendants argue Dr. Hess's testimony about the event studies should be excluded because the Government has not established the "requisite relationship" between the Bank's reporting of its past due loans and its provision for loan losses. (D.I. 618 at 2). More specifically, they argue that Dr. Hess failed to control for other metrics that may impact the

2

Bank's provision for loan losses (*id.*) or for other information included in its earnings releases (*id.* at 8). Further, they argue that the Government mischaracterizes the Bank's internal rating guidelines. (*Id.* at 2–3).

While Dr. Hess considered the Bank's reporting of its past due loans generally, as part of his event study analysis, he neither identified any curative disclosure nor attempted to separate out the subset of past due loans at issue in the Indictment. Thus, Dr. Hess's analysis and testimony do not prove the materiality of the alleged misstatements. *See United States v. Schiff*, 538 F. Supp. 2d 818, 838 (D.N.J. 2008), *aff'd*, 602 F.3d 152 (3d Cir. 2010) ("Without a causal link to the curative disclosure of the misstatement charged in the indictment, evidence of a stock price drop is not probative of the materiality of that alleged misstatement . . . ."). I think his testimony about the event studies is probative, however, to the extent that a showing that the Bank's reporting of its past due loans is material makes it more likely that a lie about its past due loans is material. *See* Fed. R. Evid. 401. In my opinion, Defendants' objections to Dr. Hess's first three event studies are better suited for cross-examination.

Nevertheless, at this point, it is not apparent to me that the Government needs Dr. Hess's testimony in light of the other evidence I understand it will introduce at trial regarding the materiality of the alleged misstatements. *Cf. United States v. Driggs*, 823 F.2d 52, 54 n.2 (3d Cir. 1987) (noting that part of Rule 403 balancing "involves evaluating the presence or absence of a genuine need for the evidence in question"). Thus, while I reject Defendants' *Daubert* challenge to Dr. Hess's testimony about the January 29, April 23, and July 23, 2010 event studies, I will **RESERVE DECISION** on the admissibility of his testimony about those three event studies. The Government should wait until the end of its case to offer Dr. Hess's testimony about those event studies.

3

As to the November 1, 2010 earnings release, I agree with Defendants that Dr. Hess's testimony about that event study is unreliable. Unlike the earnings releases in January, April, and July 2010, the November 2010 earnings release coincided with the announcement of Wilmington Trust's merger with M&T Bank. At the hearing, Dr. Hess acknowledged that, while he could have, he did not disentangle the earnings release from the merger announcement. (*See* D.I. 599 at 60:17–61:24). I am not convinced by the Government's argument that Dr. Hess's methodology accounted for the merger announcement because of the "substantial overlap" between the merger price and the Bank's increased provision for loan losses, which were both reflected in the stock price following the November announcement. (*See* D.I. 609 at 4). Because Dr. Hess did not account for the merger, I think any opinion he might offer about the relationship between the Bank's reporting of its past due loans and its stock price on November 1, 2010 would not be the product of a reliable methodology. *See* Fed. R. Evid. 702(c). Dr. Hess is thus **PRECLUDED** from testifying about the November 1, 2010 event study. `

At the hearing, Dr. Hess testified about Uniform Bank Performance Report data. In particular, he opined that UBPR data, offered as Government Exhibit 18, was consistent with his regression analysis. (*See* D.I. 599 at 69:25–70:5). Further, in its supplemental letter, the Government proffered that the UBPR data "shows where [the Bank's] significant financial metrics diverged from those of its peer institutions." (D.I. 609 at 5). Defendants argue the UBPR data is irrelevant and unreliable. (D.I. 618 at 8).

It seems to me that the UBPR data does nothing more than show a comparison between Wilmington Trust's financial performance and the performance of certain "peer banks" selected by the Federal Financial Institutions Examination Council. I am hard pressed to see how that comparison is relevant to the materiality of the Bank's reporting of its past due loans. To the

extent it is relevant, its probative value is substantially outweighed by the image it creates of Wilmington Trust lagging significantly behind its peer banks. *See* Fed. R. Evid. 403. Dr. Hess is thus **PRECLUDED** from testifying about the UBPR data. Defendants' motion (D.I. 595) to exclude Dr. Hess's UBPR data analysis on the basis that the Government violated its disclosure obligations pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) (D.I. 596) is therefore moot.

Thus, Defendants' motion to exclude (D.I. 382) is **DENIED** in part, **GRANTED** in part, and **RESERVED** in part. Defendants' second motion to exclude (D.I. 595) is **GRANTED**.

It is **SO ORDERED** this 12 day of February 2018.

Richard G. Andrews
United States District Judge

5