IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Crim. Action. No. 15-23-RGA |
| | ) |
| DAVID R. GIBSON, | ) |
| ROBERT V.A. HARRA, | ) |
| WILLIAM B. NORTH, and | ) |
| KEVYN RAKOWSKI, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

### Government's Motion *in Limine* (D.I. 623)

The Government moves to exclude Commercial Loan Download evidence attached to its motion as Exhibits H through J. Alternatively, the Government requests that if I admit those Exhibits, that I allow the Government to introduce Exhibit E, which contains the past due loan information Wilmington Trust submitted to the Federal Reserve in advance of the 2009 examination. (D.I. 623 at 4). At the February 12th hearing, I admitted Exhibits E, H, and I by agreement. (D.I. 655 at 19:20–21). I indicated (*id.* at 19:22–23), and the parties agreed (*id.* at 8:21–24, 9:5–8), that those Exhibits will not be admitted for the truth of the matters asserted therein. Thus, the Government's motion (D.I. 623) is **DENIED** as to Exhibits H and I. I also ruled that I will **RESERVE JUDGMENT** as to the relevance of the documents, identified at the hearing, which I understand relate to the 2008 examination with financial data from 2007. (D.I. 655 at 19:24–20:3). Further, I will **RESERVE JUDGMENT** as to the relevance of Exhibit J attached to the Government's motion. That Exhibit appears to relate to financial data from 2006 and 2007.

**Defendant Robert V.A. Harra's Motion *in Limine* (D.I. 624)**

Defendant Robert V.A. Harra moves to preclude the Government from introducing aerial and ground photographs of projects financed by Wilmington Trust. The crux of Defendant's argument is that the photographs are irrelevant and that admitting them would be unfairly prejudicial. (D.I. 624 at 2–4). At the hearing, I indicated that I do not think the photographs are relevant to the charged conduct and thus **EXCLUDED** them from the Government's case-in-chief.[1] (D.I. 655 at 28:20–22). Defendant's motion (D.I. 624) is therefore **GRANTED**.

**Defendant David R. Gibson's Supplemental Motion to Exclude Improper Testimony by Hickman Beckner (D.I. 625)**

Defendant David R. Gibson supplements Defendants' prior motion (D.I. 561)[2] to exclude the testimony of Hickman Beckner. Defendant argues Mr. Beckner's testimony should be excluded for two principal reasons: (1) Mr. Beckner has no personal knowledge of the individual Defendants, and (2) his proffered testimony contains an impermissible legal opinion. (*See* D.I. 625 at 2–4).

As to the first issue, as I explained at the hearing, I do not think Mr. Beckner's testimony is inadmissible because he does not know the individual Defendants. (D.I. 655 at 29:15–20). As I understand it, the purpose of Mr. Beckner's testimony is to explain how the SHAW program works. As to the second issue, the Government proffered at the hearing that it will not elicit testimony from Mr. Beckner in regard to the SHAW program's being designed to comply with federal law. (*See id.* at 30:24–31:10). I explained that based on the Government's representations regarding the scope of Mr. Beckner's testimony, I think the testimony is relevant.

---

[1] I noted the photographs may become relevant if Defendants present evidence that makes the status of Wilmington Trust's projects a disputed issue. (D.I. 655 at 28:13–20).

[2] Wilmington Trust Co. filed that motion. The individual Defendants joined. (D.I. 565, 567, 569, 570).

2

(*Id.* at 34:4–6). Further, I indicated I do not think there is any risk of unfair prejudice to Defendants. (*Id.* at 34:6–7). Defendant's motion (D.I. 625) is therefore **DENIED**. Defendants' first motion (D.I. 561) is **DISMISSED** as moot.[3]

### Defendant David R. Gibson's Motions *in Limine* (D.I. 626)

First, Defendant moves to preclude testimony about Wilmington Trust's Allowance for Loan and Lease Losses ("ALLL"). (D.I. 626 at 2). Second, he moves to preclude testimony about the Bank's risk ratings. (*Id.* at 6). The core of Defendant's argument is that ALLL and risk ratings are irrelevant—the Government has failed to show that "the charged conduct . . . is causally tied" to the Bank's ALLL or its risk-rating determinations. (*See id.* at 2, 6). Further, Defendant asserts that testimony related to ALLL and risk-ratings would be unfairly prejudicial and cause jury confusion. (*Id.* at 3, 7).

For the reasons stated at the hearing (D.I. 655 at 57:3–13), Defendant's motions (D.I. 626) are **DENIED**. In my opinion, the probative value of the evidence related to ALLL and risk ratings is not substantially outweighed by the risk of confusion or unfair prejudice to Defendants. *See* Fed. R. Evid. 403.

### Defendant William B. North's Motion *in Limine* (D.I. 627)

Defendant William B. North moves to preclude the Government from presenting evidence related to "supplemental financing." Defendant argues the Government cannot show a connection between the Bank's use of supplemental financing and the so-called "Waiver

---

[3] Defendants' original motion raised three primary arguments: (1) Mr. Beckner lacks personal knowledge to testify about Wilmington Trust's banking practices or its use of the SHAW system, (2) his proffered testimony includes impermissible opinions, and (3) he cannot provide expert testimony. (*See generally* D.I. 562). Based on the Government's representations on February 12th, these arguments are no longer relevant. In particular, the Government represented that Mr. Beckner's testimony will be limited to his background and experience with SHAW and what the SHAW system is and how it works. (*See* D.I. 655 at 31:5–9, 32:8–11).

3

Practice." (D.I. 627 at 1). In particular, Defendant criticizes the Government's summary witness, Larry Hart, for not distinguishing between the different types of supplemental financing received by various loans. (*Id.* at 2). Defendant points specifically to the "September 2009 Supplemental Financing" schedule from Mr. Hart's analysis. (*Id.*).

At the hearing, the Government represented that Mr. Hart did not in fact rely on the Supplemental Financing schedule identified by Defendant in his motion. (D.I. 655 at 68:17–21). The Government has further represented that it intends to call fact witnesses from the Bank to explain various Bank spreadsheets that include both initial interest reserves and supplemental reserves. (D.I. 646 at 7; *see also* D.I. 655 at 70:3–6).

Based on the Government's representations, I think the Government has evidence, which may or may not be accepted by the jury, about the interrelatedness of the Bank's use of supplemental financing and the Waiver Practice. As I explained in my memorandum order of October 5, 2017, I think evidence related to supplemental financing is relevant, and the Government may introduce it subject to two limitations: "(1) the evidence must relate to conduct during the time period of the alleged conspiracy or the months leading up to it, and (2) the evidence must relate to the use of supplemental financing for the 'waived' loans that are at issue in this case." (D.I. 560 at 8). The Government has repeatedly represented that the supplemental financing evidence it will introduce at trial falls within those parameters. (*See* D.I. 655 at 67:13–16, 78:1–2; *see also* D.I. 646 at 5).

Further, I do not think the probative value of the evidence is substantially outweighed by the risk of wasting time or confusing the issues. *See* Fed. R. Evid. 403.

Thus, my October 5th ruling in regard to supplemental financing has not changed. Defendant's motion (D.I. 627) is **DENIED**.

**Defendant Kevyn Rakowski's Motion *in Limine* (D.I. 631)**

Defendant Kevyn Rakowski moves pursuant to Federal Rule of Evidence 407 to preclude the Government from suggesting that a change in the Bank's policy is evidence of Defendants' culpability.

Rule 407 prevents a party from introducing evidence of a subsequent remedial measure to prove, among other things, culpable conduct. Fed. R. Evid. 407. As Defendant acknowledged in her motion, existing case law is inconsistent with respect to whether Rule 407 is properly understood to apply to criminal cases. *Compare United States v. Pac. Gas & Elec., Co.*, 178 F. Supp. 3d 927, 951 (N.D. Cal. 2016) (finding Rule 407 can apply to criminal cases), *with United States v. Gallagher*, 1990 WL 52722, at *1 (E.D. Pa. Apr. 24, 1990) (concluding Rule 407 does not apply to criminal cases). The parties do not cite to, and I am unaware of, any binding case law on the issue.

I need not decide, however, whether Rule 407 applies to criminal cases. Even assuming it does, it would not apply to the objected-to evidence in this case. The Rule defines a subsequent remedial measure as a measure "taken that would have made an earlier injury or harm less likely to occur." Fed. R. Evid. 407. As the Government noted in its response, courts generally distinguish between measures taken before and after the beginning of an investigation or the filing of a lawsuit. *See, e.g., United States v. Patrick*, 2016 WL 6610983, at *5 (E.D. Mich. Nov. 9, 2016).

Defendant argues a change in Bank policy around July 2010, which ended the Waiver Practice, constitutes a subsequent remedial measure under Rule 407. (*See* D.I. 631 at 1–2). Accordingly, Defendant contends, the Government should be precluded from arguing at trial that the elimination of that practice is evidence of Defendants' culpability. (*Id.* at 2). At the hearing,

Defendant further argued that the Federal Reserve's 2010 Full-Scope examination "trigger[ed]" the Bank's decision to change how it reports its past due loans. (*See* D.I. 655 at 151:21–152:2).

I am hard pressed to see how the Bank's eliminating the Waiver Practice constitutes a subsequent remedial measure under Rule 407. First, it is unclear what Defendant considers to be the prior harm or injury. In fact, Defendant maintains there was no harm caused by the Waiver Practice. (*See id.* at 148:8–10 ("Your Honor, we would suggest that no harm was done by what the Government has called the waiver practice.")).

Second, Defendant cites no authority to support her contention that the elimination of the Waiver Practice constitutes a subsequent remedial measure because it occurred after the Federal Reserve had begun its 2010 Full-Scope examination of the Bank. Defendant does not seem to dispute that the Bank eliminated the Waiver Practice before the Government began its investigation into this case and filed criminal charges against Defendants and before the filing of any civil lawsuit.

Third, and more generally, I do not think applying Rule 407 here would make sense in light of the purposes of the Rule and the types of criminal cases in which it has been held to apply. Rule 407 rests in part "on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." Fed. R. Evid. 407 advisory committee's notes on proposed rules. Thus, as the Government points out, it makes sense that the criminal cases in which it has applied involve public safety concerns, such as hazardous conditions following a gas line explosion. *See, e.g., United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927 (N.D. Ca. 2016). There is no such identifiable harm and related safety concern here.

Finally, I think evidence related to the Bank's change in policy is relevant. I do not think there is any particular risk of unfair prejudice to Defendants. *See* Fed. R. Evid. 403. Thus, Defendant's motion (D.I. 631) is **DENIED**.

Entered this 16 day of February 2018.

/s/ Richard G. Andrews
United States District Judge