IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:15-23-RGA |
| | ) | |
| | ) | |
| DAVID R. GIBSON, | ) | |
| ROBERT V.A. HARRA, | ) | |
| WILLIAM NORTH, and | ) | |
| KEVYN RAKOWSKI, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT KEVYN RAKOWSKI'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTION REGARDING DEFENSE EXPERT BARRY PELAGATTI**

Defendant Kevyn Rakowski respectfully submits the following Response in Opposition to the Government's Motion Regarding Defense Expert Barry Pelagatti (the "Motion") (D.I. 694).

As the Court noted during the *Daubert* hearing, Mr. Pelagatti relied on "half a dozen things" and answered the Government's questions. (2/27/18 Tr. 115-116) The fact that Mr. Pelagatti's answers were not helpful to the Government do not make them unsatisfactory for the Court. (2/27/18 Tr. 116:2-5) Mr. Pelagatti relied on his extensive experience as an auditor for 25 years, his technical dialogues and meetings with fellow auditors within and outside of his firms regarding the reporting of past due loans, attendance as a participant and an instructor at multiple conferences where past due loans were discussed, guidance in existence during the relevant time period, conversations with clients regarding past due loans and the audits he conducted — the Government makes several irrelevant and misplaced criticisms that are more appropriate for cross-examination at trial than a motion to exclude expert testimony.

1

Furthermore, the defendants will not elicit improper testimony and Mr. Pelagatti will not be giving an opinion on the defendants' conduct nor mental state based upon the custom and practices of the industry as argued by the Government.

Mr. Pelagatti's disclosure is sufficient and meets the requirements under Rule 16. The Government mischaracterizes Mr. Pelagatti's opinions by identifying them as "audit opinions" and a "professional service" which they are neither. The Government is also mistaken in equating Mr. Pelagatti's opinion to an attestation. The Government appears to be confused as to what professional standard applies to Mr. Pelagatti. Mr. Pelagatti is rendering expert opinions, <u>not</u> giving an audit opinion, providing a professional service, or an attestation. Mr. Pelagatti has reviewed sufficient relevant data to render his opinions. Furthermore, he does not make any opinions regarding Wilmington Trust Company's ("WTC") overall effectiveness of internal control nor does he address the "adequacy" of KPMG's audit opinion. Mr. Pelagatti addresses the appropriateness of KPMG's procedures as applied to issues relevant to this case, and explains how KPMG applied those procedures during its relevant audits of WTC.[1]

## ARGUMENT

**1.     Mr. Pelagatti Meets the *Daubert* Standards and Should Be Permitted to Testify Regarding his "Customs and Practices" Opinion.**

Mr. Pelagatti's customs and practices opinion is "that it was not uncommon for institutions that had loans that were mature, current for interest, and in the process of being evaluated to not be reported as past due" during the relevant time period. (2/27/18 Tr. 37:22-25)

He based this opinion on:

---

[1] A listing of the documents reviewed and evaluated by Mr. Pelagatti in order for him to form his opinions has been attached for the Court's use as "Exhibit A".

- His 25-year tenure in the banking and financial services industry where he has conducted approximately 300 audits of approximately 120 banks (2/27/18 Tr. 7-8, 38-39);

- His serving in leadership roles as an audit partner as well as an audit review partner in his various firms' financial services technical accounting groups and has knowledge of the relevant regulatory guidance and auditing and accounting standards in effect during the relevant time period (2/27/18 Tr. 9, 16-18, 38-39);

- His technical conversations with other practicing audit partners at his firms and competitor accounting firms where they discussed matured loans that were not reported as past due (2/27/18 Tr. 9, 16-18, 38-39, 79-80, 94);

- His general conversations with clients regarding the reporting of past due loans (2/27/18 Tr. 9, 16-18, 38-39);

- Attendance and teaching at training sessions and networking events at conferences where reporting of past due loans was addressed (2/27/18 Tr. 16-18, 24-27, 38-39);

- OCC's Bank Accounting Advisory Series ("BAAS"), which provides interpretations of GAAP and expresses the OCC's views on accounting topics relevant to banks (2/27/18 Tr. 29-39);

- OTS's Thrift Financial Report ("TFR") Questions and Answers ("Q&A), specifically Q&A No. 179, which is corroborative of his opinion and forms an additional basis for that opinion (2/27/18 Tr. 39-42); and

- Information learned at national, regional and state accounting and auditing conferences like the AICPA National Conference on Banks and Savings Institutions which typically included panel discussions with regulator panelists and addressed topics relevant to the reporting of past due loans (2/27/18 Tr. 16-18, 24-27, 38-39).

The Government is simply misconstruing his testimony by arguing that his opinion is premised on "informal" conversations. First, Mr. Pelagatti explained that these "informal" conversations were anything but. As Mr. Pelagatti explained, the conversations that helped form a basis for his customs and practices opinion took place at specific conferences for accountants and auditors, and were discussed in the context of presentations made at those conferences about

what other auditing experts were seeing at their clients.[2]  Second, while the Government objected at the hearing that Mr. Pelagatti could not define the specific facts and circumstances that make up his customs or practices opinion, the Court disagreed and stated, "I thought that when you pressed him, he came up with half a dozen things." (2/27/18 Tr. 115:1-5).  Third, this Court recognized that Mr. Pelagatti's opinion was based on "a diversity of approaches." (2/27/18 Tr. 115:21-23).

During the *Daubert* hearing, Mr. Pelagatti and Defendants' counsel made clear that he was not testifying about, nor tasked with as part of his expert engagement, Call Report guidance or instructions.  (2/27/18 Tr. 51-64).  He nonetheless explained how the various accounting and regulatory guidance issued at the time was confusing and somewhat contradictory to those needing to interpret such guidance in the banking industry.  (2/27/18 Tr. 106-107)  He made it clear that it was a struggle for his profession and created a challenge for any institution that had to report to multiple agencies, like WTC and other Wilmington Trust entities.  However, unlike the Government argues, this struggle and diversity corroborated his opinion and did not in any way falter his opinion that there was a practice of not reporting past due loans that were matured, current for interest and in the process of extension during the relevant time period.

A. **Mr. Pelagatti's Customs and Practices Opinion Satisfies the Reliability Requirement**

Mr. Pelagatti's opinion meets the reliability requirement under Rule 702.  As Defendants cited during the *Daubert* hearing, in *ProtoComm Corp.*, the Court distinguished between the reliability factors applicable to a scientific method versus a complicated business transaction.

---

[2] Mr. Pelagatti is not permitted to testify or provide any specific information regarding his clients or information he confidentially obtained during the course of his audits.  *See* AICPA Professional Standards (Attached as "Exhibit B"), Section 1.700.090 titled, "Disclosing Client Names," paragraph 01 stating that "The member's disclosure of a client's name would not violate the "Confidential Client Information Rule" [1.700.001]).  While SEC and regulatory filings may be publicly available, Mr. Pelagatti is not able to provide any information regarding practices or procedures employed at financial institution clients or other decisions that affected what was ultimately reported by those clients.

4

*ProtoComm Corp. v. Novell Advanced Services, Inc.*, 171 F.Supp. 2d 473, 477 (E.D. Pa. 2001). Citing to *Kumho Tire*, the *ProtoComm* Court explained that "relevant reliability concerns may focus upon personal knowledge or experience," as opposed to "scientific foundations." *Id. citing Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 141 (1999). Pursuant to the above listed qualifications, knowledge and experience, Mr. Pelagatti is qualified to testify here since he has "'specialized knowledge', and experience which is clearly beyond that of the average layman in the areas most relevant to the case." *Id.* at 479. "It is not for this Court to decide whether those opinions are in fact accurate, only that they are based on a reliable method." *Id.* Like the Court reiterated in *ProtoComm*, if the Government thinks of Mr. Pelagatti's opinions to be "flimsy", they can challenge his opinions "through cross-examination and presentation of contrary evidence…." *Id. citing Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993). Mr. Pelagatti has satisfied the qualifications and reliability factors under *Daubert.*

B. **Mr. Pelagatti's Customs and Practices Opinion Satisfies the Fit Requirement**

The Government's argument that there is no fit with Mr. Pelagatti's proposed customs and practices testimony ignores the well-established principles of uniformity, collaboration and consistency inherent in every federal examination of regulated banks by federal and state regulators. Both the FDIC and the Fed, along with the Office of Thrift Supervision ("OTS") (now the Office of the Comptroller of Currency ("OCC")), are members of the Federal Financial Institutions Examination Council ("FFIEC"). (Ex. B, FFIEC Website). The FFIEC "is a formal interagency body empowered to prescribe <u>uniform principles, standards and report forms</u> for the federal examination of financial institutions…and to make recommendations to promote uniformity in the supervision of financial institutions." (*Id.*) (Emphasis added). As set forth on the FFIEC website, "[t]he Council is responsible for developing <u>uniform reporting systems</u> for

federally supervised financial institutions, their holding companies, and the nonfinancial institution subsidiaries of those institutions and holding companies." (*Id.*) (Emphasis added).

As Mr. Pelagatti explained, the FFIEC is a joint agency that consisted of all the regulators – OTS, OCC, and the Federal Reserve Board – and that Wilmington Trust reported to all three of these agencies. (2/27/18 Tr. 28-29) OTS and OCC were most active in providing guidance. Auditors and bankers alike would turn to the guidance released by these agencies for relevant interpretations, such as with the BAAS and TFR Q&A. (2/27/18 Tr. 27-29, 38-43), which is what Mr. Pelagatti did.[3] (*See, e.g.*, 2/27/18 Tr. 39-43)

The Government's argument that there is no fit here also ignores the Third Circuit's holding in *Mathis* defining fit to mean specialized knowledge that will assist the trier of fact. *Id.* at 479 *citing U.S. v. Mathis*, 264 F.3d 321, 334 (3d Cir. 2001). The Third Circuit further defined admissibility under "fit" to turn on connections between the opinion and the disputed facts at issue. *Id. citing Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3rd Cir. 2000). "The measure is 'not intended to be a high one.'" *Id. citing Oddi.* "Its standard is not dissimilar to the general liberal standard of relevance under the Rules." *Id. citing Mathis at 334.*

Here, Mr. Pelagatti's opinion regarding the custom and practices of the banking industry regarding the reporting of past due loans that were matured, current for interest in the process of extension during the relevant time period goes to the heart of the issues at hand and will help the jury understand the complicated business practice of reporting and the inherently subjective evaluations involved.

---

[3] The Government's attempt to focus solely on SEC Industry Guide 3 is inappropriate. (*See* Tr. 2/27/18:113) SEC Industry Guide 3 was first written in 1978, and not updated between 1986 and the alleged conspiracy period. As set forth in a public request for comment on SEC Industry Guide 3, "The financial services industry has changed dramatically since Guide 3 was first published. Consequently, ***our disclosure guidance may not in all cases reflect recent industry developments or changes in accounting standards related to financial and other reporting requirements***." Request for Comment on Possible Changes to Industry Guide 3 (Statistical Disclosure by Bank Holding Companies), SEC Rel. No. 33-10321; 34-80131; File No. S7-02-17, *available at* https://www.sec.gov/rules/other/2017/33-10321.pdf (emphasis added).

6

C. **The Nature of Mr. Pelagatti's Opinion Is Appropriate**

As the Defendants highlighted during the *Daubert* hearing, the Third Circuit has permitted opinions similar to the one at hand and the Government is misinterpreting this guidance. In *Berckeley,* the Court held that an expert could testify regarding industry custom with respect to interpreting regulatory guidance and requirements to an ultimate issue to be determined by the trier of fact with the exception of intent in a criminal case. *Berckeley Inv. Grp., Ltd. V. Colkitt*, 455 F.3d 195 (3d. Cir. 2006). As *Berckeley* and its progeny allow, Mr. Pelagatti is testifying to industry custom and practice with regards to reporting of matured, current for interest loans that were in the process of extension "to provide background information to <u>help the jury</u>" understand the Defendants' conduct and industry practice. *See id.* at 218 *citing First State National Bank v. Reliance Elec. Co.*, 668 F.2d 725, 731 (3d Cir. 1981) (permitting expert testimony as to the established custom and practice in the banking industry regarding interpretation and trade usage of specific language in the Uniform Commercial Code) (Emphasis added.) Here, Mr. Pelagatti is not giving an opinion "as to what was required under the law or whether the defendant[s] complied" with the law. *Id. citing United States v. Leo*, 941 F.2d 181, 195-196 (3d. Cir. 1991) (permitting general testimony of business custom regarding interpretation of specific regulation in the defense industry in a criminal fraud trial).

The Defendants should be permitted to put on "evidence of industry custom and practice to demonstrate that they had not acted with the requisite scienter". *Id.* at 219 *citing Newton v. Merrill, Lynch, Pierce, Fenner & Smith*, 135 F.3d 266, 273 (3d Cir. 1998) (*Newton I*) Mr. Pelagatti's custom and practices opinion is well within the parameters of what is allowed by *Berckeley* and its progeny.

Further, the Government misconstrues the nature of Mr. Pelagatti's testimony. Mr. Pelagatti will not be giving an attestation. (2/27/18 Tr. 83:20-22) GAAS attestation standards are inapplicable to Mr. Pelagatti as an expert witness. Mr. Pelagatti is not rendering an "audit" opinion. The Government appears to be confused as to what professional standard applies to Mr. Pelagatti as an expert. Mr. Pelagatti will be testifying as an expert and the consulting standards are applicable. And as the Government concedes, the consulting standards require that he review "sufficient relevant data" and not the whole universe of documents. Contrary to the Government's position, Mr. Pelagatti has obtained and reviewed sufficient relevant data to afford a reasonable basis for his conclusions.[4] If the Government is not satisfied with the amount of documents reviewed by Mr. Pelagatti, they will have the opportunity to cross-examine him with regards to the accuracy of his statement. *See ProtoComm supra.*

---

[4] *See* Exhibit A.

Dated: March 12, 2018

/s/ John S. Malik
John S. Malik (#2320)
LAW OFFICE OF JOHN S. MALIK
100 East 14th Street
Wilmington, DE 19801
Tel.: (302) 427-2247

Kenneth M. Breen
John P. Nowak
Phara A. Guberman
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Tel.: (212) 318-6000

*Attorneys for Defendant*
*David R. Gibson*

/s/ David Wilks
David Wilks (#2793)
R. Stokes Nolte (#2301)
Andrea S. Brooks (#5604)
Samuel Lee Moultrie (#5979)
WILKS, LUKOFF & BRACEGIRDLE LLC
4250 Lancaster Pike, Suite 200
Wilmington, Delaware 19805
Tel.: (302) 225-0850

Thomas A. Foley (#2819)
THOMAS A. FOLEY
1905 Delaware Avenue
Wilmington, DE 19806
Tel.: (302) 658-3077

*Attorneys for Defendant*
*William North*

/s/ Michael P. Kelly
Michael P. Kelly (#2295)
Steven P. Wood (#2309)
Geoffrey N. Rosamond
McCARTER & ENGLISH
405 N. King Street, 8th Floor
Wilmington, DE 19801
Tel.: (302) 984-6301

Andrew M. Lawler
ANDREW M. LAWLER, P.C.
641 Lexington Avenue, 27th Floor
New York, NY 10022
Tel.: (212) 832-3160

*Attorneys for Defendant*
*Robert Harra*

/s/ Ipek K. Medford
Ipek K. Medford (#4110)
Bartholomew J. Dalton (#808)
Andrew C. Dalton (#5878)
DALTON & ASSOCIATES P.A
1106 West Tenth Street
Wilmington, DE 19806
Tel.: (302) 652-2050

Henry E. Klingerman
Helen A. Nau
KROVATIN KLINGEMAN LLC
60 Park Place, Ste. 1100
Newark, NJ 07102
(973)424-9777

*Attorneys for Defendant*
*Kevyn Rakowski*