IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Crim. Action. No. 15-23-RGA |
|  | ) |  |
| DAVID R. GIBSON, | ) |  |
| ROBER V.A. HARRA, | ) |  |
| WILLIAM B. NORTH, and | ) |  |
| KEVYN RAKOWSKI, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**MEMORANDUM ORDER**

The Government filed a motion in regard to the admissibility of a "Question and Answer" ("Q&A") from the website of the Office of Thrift Supervision ("OTS")[1] related to the reporting of past due construction loans. (D.I. 714). The issues are fully briefed. (D.I. 716, 719, 722, 726, 730).

As an initial matter, there seems to be no dispute that, during the relevant time period, Wilmington Trust was required to file Thrift Financial Reports ("TFR") with OTS, in which the Bank disclosed its number of past due loans.

OTS, like the Federal Reserve Bank, was a member of the Federal Financial Institutions Examination Council ("FFIEC"). Established in 1979, FFIEC "is a formal interagency body empowered to prescribe uniform principles, standards, and report forms for the federal examination of financial institutions" and "to make recommendations to promote uniformity in

---

[1] OTS is a former federal regulator of federal and state-chartered savings institutions in the United States. In July 2011, OTS merged with the Office of the Comptroller of the Currency ("OCC"). *OTS Integration*, Office of the Comptroller of the Currency, https://www.occ.treas.gov/about/who-we-are/occ-for-you/bankers/ots-integration.html (last visited April 12, 2018).

the supervision" of those institutions. *About the FFIEC*, Federal Financial Institutions Examination Council, https://www.ffiec.gov/about.htm (last visited April 12, 2018).

The TFR Instruction Manual, Schedule PD, provides in relevant part:

> 2. Report loans . . . as past due when either interest or principal is unpaid in the following circumstances: . . .
>
>> c) Single payment and demand notes providing for the payment of interest at stated intervals (such as certain construction loans) after one interest payment is due and unpaid for 30 days or more.
>>
>> d) Single payment notes providing for the payment of interest at maturity if interest or principal remains unpaid for 30 days or more after maturity.

(D.I. 667-1, Exh. A[2] at p. 2 (emphasis omitted)). Defendants maintain, and I agree, that those two circumstances mirror circumstances #3 and #4 related to past due loans from the RC-N Call Report Instructions. (*Compare id.*, *with* D.I. 396-5 at pp. 1–2).

The OTS Q&A at issue, dated September 5, 2002, can be accessed through OCC's website. *See TFR Questions and Answers*, Office of the Comptroller of the Currency, https://occ.gov/static/ots/thrift-financial-files/trf-q-and-a.pdf (last visited April 12, 2018). The Q&A reads:

> **Q&A No. 179**
> **SUBJECT: Loans Past Maturity**
> **LINE(S): Schedule PD**
> **DATE: September 5, 2002**
>
> **Question:** *We have a portfolio of construction loans that require interest-only payments due monthly with the principal due at maturity. Some of these loans are past their maturity date. The*

---

[2] The Schedule PD documents provided by Defendants are dated March 2009. (*See* D.I. 667-1, Exh. A). The Government does not suggest or argue that the relevant provisions of Schedule PD have materially changed since 2002, the year when OTS apparently wrote the disputed Q&A. Nor does the Government suggest or argue that OTS was not a member of FFIEC in 2002.

2

> *borrowers have continued to pay the contractual monthly interest payments. Should these loans be excluded from Schedule PD?*
>
> **Answer:** If management has restructured or extended a loan – formally or informally, then the loan would not be past due. An informal extension (not the same as a restructuring) is when the bank has agreed to accept interest payments until the property is rented or sold. The extension should be for a limited and reasonable length of time and the bank should get the extension in writing. From the borrower's perspective, if he is doing what the bank has told him, the loan is not in default and does not have to be reported in Schedule PD.

(D.I. 667-1, Exh. C at p. 99).

In its motion, the Government seeks to exclude the OTS Q&A from jury instructions and at trial. As to jury instructions, it argues the Call Report Instructions related to past due loans are unambiguous as a matter of law and that I should so instruct the jury. (D.I. 714 at 1, 7–8). Further, citing *United States v. Willson*, 708 F.3d 47, 58 (1st Cir. 2013), the Government argues Defendants are not entitled to an instruction incorporating the Q&A absent evidence "they actually held an objectively reasonable belief that their conduct in reporting past due loans conformed to the information on the Q and A webpage." (*Id.* at 1). As to whether the Q&A is admissible at trial, the Government submits that I should exclude it absent evidence of Defendants' "contemporaneous reliance" on the Q&A. (*Id.* at 11).[3]

---

[3] Further, in its reply, the Government argues that the historical nature of thrift institutions and the fact that there is "no comparable reporting data item in the Call Report for Past Due 'Construction' Loans reported in the TFR," renders the Q&A irrelevant. (D.I. 719 at 6–9 (emphasis omitted)). I am not persuaded by the Government's argument. It may be the case that, according to "mapping" information available on OCC's website, there is no corresponding line item in the Call Report for "construction" loans reported in the TFR. Further, it may be that thrift institutions historically focused on residential mortgages and consumer loans. I do not think either makes the Q&A irrelevant. The Q&A refers generally to "construction" loans that are past maturity. The Government does not dispute that the Q&A relates to the reporting of past due "construction" loans pursuant to Schedule PD. Thus, I do not agree the Q&A is irrelevant because there is no comparable line item in the Call Report or because of the nature of thrift institutions.

3

As an initial matter, it is my job to instruct the jury regarding applicable reporting requirements. *See United States v. Prigmore*, 243 F.3d 1, 17–18 (1st Cir. 2001). Further, to the extent applicable law is ambiguous and thus subject to multiple reasonable interpretations, it is my job to decide whether a particular interpretation is reasonable. *See id.* at 18 ("[I]f the evidence at trial gives rise to a genuine and material dispute as to the reasonableness of a defendant's asserted understanding of applicable law, the judge, and not the jury, must resolve the dispute." (citations omitted)).

Here, I do not think the applicable reporting requirements are ambiguous. The Call Report Instructions state that the "past due status of a loan . . . should be determined in accordance with its *contractual* repayment terms." (D.I. 396-5 at p. 1 (emphasis added)). They provide further that "grace periods allowed by the bank after a loan or other asset technically has become past due but before the imposition of late charges *are not to be taken into account* in determining past due status." (*Id.* (emphasis added)). They go on to provide, among other things, that "loans . . . are to be reported as past due when either interest <u>or</u> principal is unpaid in the following circumstances." (*Id.*).[4] Five circumstances follow. (*See id.* at pp. 1–2).

I think these instructions are clear in that the "repayment terms" in the loan contract, which, as I understand it, include a maturity date, control in regard to the past due status of that loan. Further, any period of time during which the loan is technically past due, that is, when interest or principal is unpaid in the five circumstances that follow in the instructions, but the

---

[4] The TFR Instruction Manual, Schedule PD, contains similar, though not identical language. Specifically, it states, "Report all loans and leases that you own that are contractually past due . . . ." (D.I. 667-1, Exh. A at p. 2). Further, it provides, "Do not take grace periods into account when determining past due status." (*Id.*). Finally, it instructs: "Report loans . . . as past due when either interest or principal is unpaid in the following circumstances." (*Id.* (emphasis omitted)).

4

bank does not impose late charges, is "not to be taken into account in determining past due status." I am hard pressed to see how these reporting instructions are ambiguous. It is not as though they state only, "Report past due loans," without any instruction as to what a past due loan is. Rather, the instructions specifically tie past due status to the loan contract and to the payment, or lack thereof, of interest or principal.

Defendants argue the instructions are ambiguous because multiple witnesses during the Government's case offered "reasonable definitions" of a past due loan. (D.I. 716 at 14). But those witnesses did not opine on the definition of past due in regard to the Call Report Instructions. Rather, to the extent they offered any definition of past due, they did so in providing context for their testimony. Hickman Beckner, for example, an employee of Shaw Systems, testified about when a loan is considered to be past due on the CL/2000 software. (3/13/18 Tr. at 1294:11–14). He did not in any way tie his testimony to past due reporting pursuant to Schedule RC-N.

Nor do I think the instructions are rendered ambiguous by the OTS Q&A. While the Q&A refers to extensions in the context of a bank's reporting of loans past maturity pursuant to Schedule PD, the Q&A is not tied to any specific language in the TFR instructions. In other words, it is impossible to tell what language, if any, the Answer portion of the Q&A purports to interpret.

In any event, even if the instructions were ambiguous, I do not think the Q&A at issue is a reasonable interpretation of those instructions insofar as it suggests the status of a loan for past due reporting purposes can change absent executed legal documents.[5]

---

[5] I note the Government has argued that, under *United States v. Willson*, 708 F.3d 47 (1st Cir. 2013), Defendants must demonstrate they actually reasonably believed their conduct conformed to the Q&A standard before it may be presented to the jury. I think the Government's

5

The Q&A provides that, pursuant to Schedule PD, a loan is not past due if bank management has formally or informally extended the loan. As to an "informal" extension, the Q&A states, among other things, that "the bank should get the extension in writing." (D.I. 667-1, Exh. C at p. 99). The Q&A's distinction between a "formal" and "informal" extension suggests that the former requires executed legal documents, while the latter requires something less.

I think the "informal" extension contemplated by the OTS Q&A essentially constitutes a "grace period." Because an "informal" extension should be in writing but does not require execution of legal documents, the extension is not a new contract. I do not see how such an interpretation is reasonable when the applicable instructions provide that a loan's "contractual repayment terms" govern in regard to determining past due status and that "grace periods . . . are not to be taken into account."

Thus, in my opinion, the Q&A's suggestion that, a bank need not execute legal documents for the status of a loan to change for past due reporting purposes, is not a reasonable interpretation of the applicable reporting requirements.[6]

---

reliance on *Willson* for that point is misplaced. In *Willson*, the defendant failed to present any evidence at trial "as to what (if any) interpretation of the relevant regulations [he] was purportedly following in preparing" the invoices at issue. 708 F.3d at 57–58. Further, the information the defendant disclosed in the invoices suggested his understanding at the time contradicted the interpretation his attorneys advanced at trial. *See id.* at 58. The *Willson* court explained that the defendant "appear[ed] to believe that the *Prigmore* rule entitles defendants to a jury instruction that effectively puts a thumb on the scale in their favor whenever their attorneys can articulate a plausible-sounding undeveloped argument that a given statute or regulation is ambiguous. Not so." *Id.* at 58. That is not the case here. Thus, I do not think Defendants must demonstrate they actually relied upon the Q&A before I may consider whether it should be incorporated into jury instructions.

[6] I note there has been some dispute as to whether agency deference plays any role in considering the import of the OTS Q&A. To the extent it does, I think it actually cuts against Defendants. As an initial matter, the Supreme Court has referred to agency deference in the

I have attached a proposed jury instruction in regard to the reporting requirements in the Call Report that reflects my conclusions as to the Q&A.

As to whether the Q&A is admissible at trial, I will allow Defendants to introduce it during their case.

While it appears that Defendants neither saw nor relied upon the Q&A,[7] I think it is relevant to their good faith belief that certain loans excluded from the Bank's Call Reports were not in fact past due under the relevant instructions. In other words, to the extent the Q&A is consistent with Defendants' belief about what was required to be reported as past due, and given that the Q&A comes from an FFIEC agency to which the Bank reported its loans pursuant to instructions that mirror the Call Report Instructions, I think the Q&A supports their defense that

---

context of a criminal prosecution of a corporate defendant's alleged violations of an emission standard promulgated by the Environmental Protection Agency. *See Adamo Wrecking Co. v. United States*, 434 U.S. 275, 287 (1978). In a footnote, *see id.* at 287 n.5, the Court specifically cites its opinion in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), in which the Court pronounced what is usually referred to as *Skidmore* deference. *Skidmore* deference generally applies to informal agency interpretations that do not have the force of law. *See Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 155 (3d Cir. 2004). I think there is no question that, assuming relevant statutory language is ambiguous, which is a prerequisite to applying *Chevron* or *Skidmore* deference to a particular agency interpretation, *see Hagans v. Comm'r of Social Sec.*, 694 F.3d 287, 295 (3d Cir. 2012), the OTS Q&A at issue would at most be entitled to *Skidmore* deference. Under *Skidmore*, the weight given to a particular agency interpretation "depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." 323 U.S. at 140. Applying those factors to the OTS Q&A, I think a low level of deference, if any, is warranted. The Q&A provides no explanation for OTS's conclusion in regard to the effect of "informal" extensions on the past due status of a loan for reporting purposes. I am unaware of any OTS guidance explaining how the agency went about drafting and publishing the Q&As now available on OCC's website. Thus, I think the first two factors weigh heavily against finding the Q&A is entitled to any deference. As to the third factor, I am unaware of any consistent or inconsistent pronouncements by OTS. Ultimately, since I am left to speculate as to OTS's reasons for reaching its conclusion, I think the Q&A lacks much, if any, "power to persuade." *See Adamo*, 434 U.S. at 287 n.5.

[7] Despite the tens of thousands of hours spent on the investigation and defense of this case, including the retention of numerous experts, the OTS Q&A was only discovered shortly before trial. There is no hint that anyone has paid it any attention since it was written in 2002.

7

they honestly believed the loans at issue were not required to be reported as past due. Thus, while the OTS Q&A may not be introduced as evidence of what the law is, and I will provide a limiting instruction to that effect, Defendants may introduce it to support their good faith defense. I have attached a proposed limiting instruction.

In my opinion, the probative value of the OTS Q&A is not substantially outweighed by any of the relevant risks under Rule 403.

Accordingly, the Government's motion (D.I. 714) is **GRANTED IN PART** and **DENIED IN PART**.

It is **SO ORDERED** this 12 day of April, 2018.

*Richard G. Andrews*
United States District Judge

**Proposed Jury Instruction**

The jury must decide whether statements in the Call Reports relating to the amount of 90-day past due loans are false.

I instruct you that a construction loan or a commercial real estate loan that requires interest-only payments due on a regular basis with the principal due at maturity becomes past due when an interest payment is not timely paid or when the principal is not paid at the maturity date. If the only reason that a loan is past due is because the principal was not paid at the maturity date, the loan does not have to be reported on the Call Report if the bank has formally restructured or extended the loan. A formal restructuring or extension of a loan requires legally-binding documents.

**Proposed Limiting Instruction**

I am admitting the Question and Answer from the Office of Thrift Supervision, Exhibit ___, for a limited purpose.

You should consider this exhibit only insofar as it bears on the question of whether any of the defendants made an honest mistake or had an honest misunderstanding about when a loan needed to be reported as past due in Wilmington Trust's Call Reports. That is the only purpose for which you may consider it. It is not being admitted as evidence of what the Call Reports actually require to be reported as past due. As I will tell you in my final jury instructions, a construction loan or a commercial real estate loan that requires interest-only payments due on a regular basis with the principal due at maturity becomes past due when an interest payment is not timely paid or when the principal is not paid at the maturity date. If the only reason that a loan is past due is because the principal was not paid at the maturity date, the loan does not have to be reported on the Call Report if the bank has formally restructured or extended the loan. A formal restructuring or extension of a loan requires legally-binding documents.

For the limited purpose for which this evidence has been admitted, you may give it such weight as you feel it deserves. You may not, however, use this evidence for any other purpose not specifically mentioned.