IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DAVID R. GIBSON,<br>ROBERT V.A. HARRA,<br>WILLIAM B. NORTH, and<br>KEVYN N. RAKOWSKI,,<br><br>            Defendants. | Criminal Action No. 15-23-RGA |

**MEMORANDUM OPINION**

Lesley F. Wolf, Assistant United States Attorney, for the Government.

Phara A. Guberman, PAUL HASTINGS LLP, New York, NY, for Defendant David R. Gibson.

Steven P. Wood, MCCARTER & ENGLISH, Wilmington, DE, for Defendant Robert V.A. Harra.

David Wilks, R. Stokes Nolte, Andrea S. Brooks, WILKS LAW, Wilmington, DE; Thomas A. Foley, THOMAS A. FOLEY, Wilmington, DE, for Defendant William B. North.

October 31, 2023

*[signature]*
**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is Defendant Robert Harra's motion to amend my order for refunding the criminal fines and assessments he paid. (D.I. 977). My order stated, "The Court's Financial Administrator is hereby directed to facilitate a payment refund of the $300,000 fine and $1,500 assessment, with interest, from the United States Treasury to Robert V.A. Harra." (D.I. 970). I issued similar orders for Defendants William B. North (D.I. 961), David R. Gibson (D.I. 968), and Kevyn Rakowski (D.I. 971). Defendant Harra specifically moved to amend my order to "require compliance with the Order by the Director of the Office for Victims of Crime, the Attorney General of the United States, the Department of Justice of the United States and the United States Treasury." (D.I. 977 at 3). In response, the Government asserted that amendment of the Order would be unnecessary and premature because the parties had been working diligently to return the funds and asked me to refrain from ruling on the motion until August 10, 2021. (D.I. 982 at 4-5). The Government also requested to modify the original orders to remove the provision for payment of interest on the refunds. (*Id.* at 5-7).

On August 11, the Government submitted a status report stating that the transaction necessary to remit the funds to Defendants had been approved. (D.I. 984). On August 24, the Government indicated that the fines and assessments had been returned to Defendants. (D.I. 988). All that remains now is the Government's request to modify the original order to remove the provision for payment of interest on the refunds.

For the reasons stated below, I will dismiss Defendant Harra's motion as moot and grant the government's request to remove the provisions for payment of interest.

I.  **BACKGROUND**

On December 17, 2018, I imposed a sentence on Defendants Harra and Gibson that included criminal fines and special assessments. (D.I. 909; D.I. 920). On December 19, 2018, I did the same with Defendant North. (D.I. 928).[1] Defendants paid the fines and assessments by January 2019. (D.I. 966; D.I. 952; D.I. 963).

Defendants appealed their convictions to the United States Court of Appeals for the Third Circuit. *United States v. Harra*, No. 19-1105 (3d Cir. Jan. 10, 2019); *Unites States v. Gibson*, No. 19-1136 (3d Cir. Jan. 16, 2019); *Unites States v. North*, No. 19-1190 (3d Cir. Jan. 24, 2019). On January 12, 2021, the Third Circuit reversed Defendants' convictions on all counts and entered judgments of acquittal on all but two counts, which were vacated and remanded.[2] *United States v. Harra*, 985 F.3d 196 (3d Cir. 2021).

Each Defendant subsequently moved this Court for orders to facilitate refunds of the criminal fines and assessments paid, with interest. (D.I. 966; D.I. 952; D.I. 963). The Government did not oppose the relief requested in the motions. (D.I. 986-1; D.I. 986-2; D.I. 963). I granted the motions for reimbursement. (D.I. 961; D.I. 968; D.I. 970). Each order provided that the reimbursements were to be "with interest." On July 16, 2021, Defendant Harra moved to amend my order to direct it not only to the Court's Financial Administrator but also to various other officers and agencies of the United States. (D.I. 977 at 3, 5). On July 26, the Government responded to the motion. It opposed Defendant Harra's requested relief as premature and requested that I refrain from ruling until August 10, 2021, by which time it expected the naming of additional officers and agencies would be unnecessary. (D.I. 982 at 1-5).

---

[1] Ms. Rakowski was not fined, and she is not arguing for an interest on the special assessments. (D.I. 991 at 1 n.1).
[2] The Government moved to dismiss the remaining counts and I granted the motion. (D.I. 976).

The Government also requested that the order, and the companion orders for Defendants Gibson and North, be amended to remove the provision for payment of interest. (*Id.* at 5-7). On July 27, 2021, I granted the Government's request to wait. (D.I. 983). On August 11, 2021, the Government submitted a status report stating that the transaction necessary to remit the funds to Defendants had been approved and reiterated its request that the provision for interest on the refunds be removed. (D.I. 984).

On August 16, 2021, Defendants filed a letter opposing the Government's request to modify the orders to remove the provision of interest. Defendants argued that the Government's request was untimely and it had waived any objection to paying Defendants interest on the refunds. (D.I. 986). On August 24, 2021, the Government filed a response arguing that there had been no waiver of the government's opportunity to object and no waiver of sovereign immunity with respect to interest payments. (D.I. 988). On August 30, 2021, Defendants filed a reply to the Government's response. In it, they contended that the Government did not oppose to the relief sought in the orders in a timely manner, thereby waiving its objection, and that sovereign immunity does not apply to interest earned on seized property because any interest accrued is part of the property itself that must be returned. (D.I. 991; D.I. 992).

## II. LEGAL STANDARD

As the sovereign, the United States is immune from the imposition of awards, including interest. The Supreme Court has expressed a general no-interest rule: "In the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award." *Library of Congress v. Shaw*, 478 U.S. 310, 314 (1986). Express waiver must be made by contract or statute. *Id.* Waivers of the Government's

4

sovereign immunity, to be effective, must be "unequivocally expressed." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95 (1990).

### III. DISCUSSION

#### A. Waiver of Sovereign Immunity

The Government contends that, despite not originally objecting to the provisions in the orders stating that the refunds were to include interest, it did not waive sovereign immunity with respect to paying interest. (D.I. 988). Specifically, the Government argues that no statutory authority or contract exists waiving sovereign immunity and authorizing the payment of interest. (*Id.*). Defendants argue that sovereign immunity is inapplicable here because the interest is part of Defendants' property to be returned and Defendants are not seeking an award against the Government. (D.I. 991).

It is undisputed that the criminal fines and assessments were paid into the Crime Victims Fund. The Crime Victims Fund was created by statute. Congress established the Crime Victims Fund to serve as a federal source of funds for programs and services for the benefit of crime victims. 34 U.S.C. §§ 20101 *et seq.* (formerly 42 U.S.C. §§ 10601 *et seq.*). The Crime Victims Fund is a non-interest bearing account. Thus, funds that are deposited into it do not accumulate interest. Since there is no interest, there is no interest to return. *See United States of America v. Sun Growers of California*, 212 F.3d 603, 605-06 (D.C. Cir. 2000). Since the statute does not contain any provision for interest, and it does not include any express language waiving the Government's sovereign immunity, there is no statutory waiver of sovereign immunity with respect to interest on refunds of criminal fines.

Defendant Harra argues that the Government's reliance on the statutory provisions establishing the Crime Victims Fund is "logically inapt" because there is no statutory provision

5

permitting the return of fines from the Crime Victims Fund to defendants who have been exonerated. Yet the Government does not rely on this lack of statutory authority to bar the return of funds. So the argument that a lack of statutory authority barring a return of interest is "logically inconsistent." (D.I. 992).

Defendants misunderstand how sovereign immunity works. Defendants paid criminal fines and assessments that were due to the United States and were deposited into the Crime Victims Fund. Upon exoneration, those fines and assessments were no longer due to the United States, and so were returned to Defendants. The award of interest is a separate issue from the return of criminal fines and assessments because, as explained below, interest is not part of the property itself. Thus, a waiver of sovereign immunity for interest must be distinct and "unequivocally expressed." *Irwin*, 498 U.S. at 95. Since there is no separate and express congressional consent to the award of interest on returned criminal fines and assessments, Defendants are not entitled to interest on the refunds.

Defendants do not cite to any statutory authority to support a claim of express waiver. Instead, Defendants point to the email exchanges in which the Government states that it does not oppose the relief requested or the substance of the relief requested. (D.I. 991, citing D.I. 991-1 & D.I. 991-2). As the Government explains, however, at the time of the email communications the Assistant U.S. Attorney did not know where the criminal fines and assessments had been deposited and what the mechanism for returning the money would be. (D.I. 988 at 2). Among other obstacles, it was unclear whether the orders with respect to interest were proper. (*Id.*). The Government worked with the appropriate personnel from the Court, the Department of Justice, and the U.S. Treasury to properly return the funds. Once the AUSA became aware of where the funds had been deposited, the AUSA promptly notified the Court of the issue concerning the interest provision,

namely that the Crime Victims Fund is a non-interest-bearing account and the Government had not waived sovereign immunity with respect to interest. (D.I. 982).

Defendants argue that the Government waived its opportunity to modify the orders by failing to timely object and consented to the award of interest. (D.I. 991). The first order issued on June 17, 2021. (D.I.961). The remaining two orders issued soon thereafter. (D.I. 968; D.I. 970). For all three orders, the AUSA indicated to Defendants' counsel that it did not oppose the relief requested. (D.I. 991-1; D.I. 991-2). Little over a month after the first order issued, the Government raised its concerns regarding interest. (D.I. 982). This delay is not inordinate considering that the AUSA was coordinating with multiple agencies to properly refund the monies to Defendants, and the delay does not negate the Government's sovereign immunity. An AUSA's statement that the Government does not oppose the refunds, while not mentioning the interest, is not an express waiver of sovereign immunity by the United States. Therefore, no contract waiving sovereign immunity exists. Since there is neither a contractual nor a statutory waiver, there is no waiver of sovereign immunity, and United States is not required to pay interest on any refunds of the criminal fines and assessments.

### B. Seized Property

Defendants contend that the interest earned on seized property is part of the property itself, and therefore must be returned in addition to the original amount of the criminal fines and assessments. (D.I. 991). Defendants cite to various civil forfeiture cases to support their argument. (*Id.*, citing *Carvajal v. United States*, 521 F.3d 1242 (9th Cir. 2008); *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491 (6th Cir. 1998); *United States v. $277,000 U.S. Currency*, 69 F.3d 1491 (9th Cir. 1995)). In *$277,000*, the Ninth Circuit held that sovereign immunity does not bar suits against the government in cases seeking to disgorge interest earned by the government on

7

currency seized for asset forfeiture purposes. *Id.* at 1498. In *Carvajal*, the Ninth Circuit reaffirmed the holding in *$277,000*, allowing a plaintiff to sue the government for interest on money seized but never subject to a civil forfeiture proceeding. *Id.* at 1248–49. Similarly, in *$515,060.42*, the Sixth Circuit held that sovereign immunity did not bar an award of interest, because the Government was never the true owner of the seized property (since it was never forfeited). *Id.* at 504.

The Third Circuit has specifically disagreed with the cases upon which Defendants rely. "[T]he minority view articulated by the Sixth, Ninth, and Eleventh Circuits is at odds with *Shaw*'s exhortation that '[c]ourts lack the power to award interest against the United States on the basis of what they think is or is not sound policy.'" *United States v. Craig*, 694 F.3d 509, 513–14 (3d Cir. 2012) (quoting *Shaw*, 478 U.S. at 321.). Further, the cases relied upon by Defendants are readily distinguished on the grounds that the amounts at issue were seized before judgment and were never properly the property of the Government. In contrast, the criminal fines and assessments at issue here were not seized by the Government; they were paid by Defendants following judgment and sentencing and became the property of the Government. Defendants legally lost ownership of the property upon sentencing, which was deposited into a non-interest bearing account.

Defendants argue that they are entitled to the constructive interest earned on the funds because the value of currency declines over time. They argue that the Government's refusal to return the funds with interest is punitive, because the Government is refunding an amount that is (in an economic sense) less than what Defendants paid. (D.I. 986; D.I. 991). I am not persuaded by this argument. "[W]hether the loss to be compensated by an increase in a fee award stems from an opportunity cost or from the effects of inflation, the increase is prohibited by the no-interest rule." *Shaw*, 478 U.S. at 322. Defendants are seeking compensation for the effects of inflation and

the opportunity costs for loss of the use of the money. "[W]hether labeled as damages, loss, earned increment, just compensation, discount, offset, penalty or any other term, the no-interest rule remains applicable." *Craig*, 694 F.3d 509, 514 (3d Cir. 2012) (citation omitted).

## IV.  CONCLUSION

An appropriate order will issue.